**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN, | Civil Action No. 2:19-CV-31-WOB-CJS |
| Plaintiff, | |
| v. | Oral Argument Requested |
| CABLE NEWS NETWORK, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Charles D. Tobin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

James E. Burke (*pro hac vice*)
Sarah V. Geiger (KBA No. 96173)
Amanda B. Stubblefield (KBA No. 96213)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
sgeiger@kmklaw.com
astubblefield@kmklaw.com

*Counsel for Defendant Cable News Network, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ....................................................... 2

A.     The January 18 Confrontation ................................................................... 2

B.     Official Reactions to the Confrontation ...................................................... 5

C.     CNN's January 19-20 News Reports .......................................................... 5

D.     Sandmann's January 20 Statement ............................................................ 7

E.     CNN's January 21-22 News Reports .......................................................... 8

F.     Sandmann's January 23 Interview ............................................................ 9

G.     CNN's January 23-25 News Reports ........................................................ 10

H.     The Diocese's "Final Investigative Report" ............................................. 11

I.     Sandmann's Complaint Against *The Washington Post* ............................ 11

J.     Sandmann's Complaint Against CNN ....................................................... 12

ARGUMENT .......................................................................................................... 12

I.     STANDARD OF REVIEW ........................................................................ 13

II.     NONE OF THE CHALLENGED STATEMENTS CAN GIVE RISE TO A
       PLAUSIBLE DEFAMATION CLAIM ........................................................ 14

       A.     Statements That Are Not About Sandmann Are Not Actionable .......... 14

              1.     Kentucky does not recognize group libel .................................. 15

       B.     Statements That Are Not Defamatory Are Not Actionable .................. 16

       C.     Statements Of Opinion Are Not Actionable ..................................... 18

              1.     Subjective expressions of opinion cannot give rise to a
                     defamation claim ................................................................ 19

              2.     Conclusions based on disclosed facts cannot give rise to a
                     defamation claim ................................................................ 19

3.    Characterizing someone as racist is a nonactionable opinion as a matter of law ........................................................................................20

D.    True Statements Are Not Actionable ....................................................22

III.   NONE OF CNN'S REPORTS CAN GIVE RISE TO A PLAUSIBLE DEFAMATION-BY-IMPLICATION CLAIM .................................................23

CONCLUSION ...........................................................................................................25

# **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Armstrong v. Shirvell,*
    596 F. App'x 433 (6th Cir. 2015) ...................................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................................13

*Bates v. N.Y. Times Co.,*
    1993 WL 557891 (W.D. Ky. Sept. 23, 1993) ...........................................................17

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.,*
    499 F.3d 520 (6th Cir. 2007) .............................................................................. *passim*

*Cox v. Hatch,*
    761 P.2d 556 (Utah 1988) ..........................................................................................17

*Dermody v. Presbyterian Church (U.S.A.),*
    530 S.W.3d 467 (Ky. Ct. App. 2017) ........................................................................14

*Edelman v. Croonquist,*
    2010 WL 1816180 (D.N.J. May 4, 2010) ...................................................................21

*Eidson v. Tenn. Dep't of Children's Servs.,*
    510 F.3d 631 (6th Cir. 2007) .....................................................................................13

*Forte v. Jones,*
    2013 WL 1164929 (E.D. Cal. Mar. 20, 2013) ..........................................................21

*Friends of the Vietnam Veterans Mem'l v. Kennedy,*
    116 F.3d 495 (D.C. Cir. 1997) .....................................................................................3

*Gahafer v. Ford Motor Co.,*
    328 F.3d 859 (6th Cir. 2003) .....................................................................................16

*Kahl v. BNA, Inc.,*
    856 F.3d 106 (D.C. Cir. 2017) ...................................................................................13

*Kimball v. Courier Journal, Inc.,*
    2009 WL 3321380 (Ky. Ct. App. Oct. 16, 2009) .....................................................16

*Ky. Fried Chicken of Bowling Green, Inc. v. Sanders,*
    563 S.W.2d 8 (Ky. 1978) ...........................................................................................15

*Lassiter v. Lassiter,*
    456 F. Supp. 2d 876 (E.D. Ky. 2006) ................................................................18, 20

*Loftus v. Nazari*,
    21 F. Supp. 3d 849 (E.D. Ky. 2014) .......................................................15, 18, 19, 20

*Louisville Times v. Stivers*,
    68 S.W.2d 411 (Ky. 1934) ...........................................................................15

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)...................................................................................22

*McCafferty v. Newsweek Media Group, Ltd.*,
    2019 WL 1078355 (E.D. Pa. Mar. 7, 2019).................................................20, 21

*New York Times v. Sullivan*,
    376 U.S. 254 (1964)...................................................................................15

*Nichols v. Moore*,
    477 F.3d 396 (6th Cir. 2007) .......................................................................24

*O'Brien v. Williamson Daily News*,
    735 F. Supp. 218 (E.D. Ky. 1990) ...............................................................15

*Ogle v. Hocker*,
    279 F. App'x 391 (6th Cir. 2008) .................................................................14

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
    418 U.S. 264 (1974).....................................................................................23

*Pearson v. United States*,
    581 A.2d 347 (D.C. 1990) .............................................................................3

*Piccone v. Bartels*,
    785 F.3d 766 (1st Cir. 2015).........................................................................19

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
    2014 WL 2863871 (E.D. Mich. June 24, 2014)................................................5

*Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018) .........................................................................5

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966)......................................................................................15

*Shields v. Booles*,
    38 S.W.2d 677 (Ky. 1931)...........................................................................16

*Seaton v. TripAdvisor LLC*,
    728 F.3d 592 (6th Cir. 2013) .......................................................................18

*Solo v. UPS Co.*,
    819 F.3d 788 (6th Cir. 2016) ........................................................................4

*Squitieri v. Piedmont Airlines, Inc.*,
    2018 WL 934829 (W.D.N.C. Feb. 16, 2018) .........................................21

*Stevens v. Tillman*,
    855 F.2d 394 (7th Cir. 1988) .....................................................................21

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ..........................................................20, 23

*Welch v. Am. Publ'g Co. of Ky.*,
    3 S.W.3d 724 (Ky. 1999) ..........................................................................13

## Statutes & Other Authorities

2 Robert D. Sack, Sack on Defamation (5th ed. 2018) ......................................14

Federal Rule of Civil Procedure 12(b)(6) ...................................................2, 12

## PRELIMINARY STATEMENT

This lawsuit arises from a series of encounters on the National Mall that were recorded on video and quickly went viral.  Many have come away from the events themselves, and the resulting media coverage, with strong, diverging views about what really happened.  But a measured look at the coverage of Defendant Cable News Network, Inc. ("CNN") makes clear that this action is unsustainable because the Complaint does not plead the essential elements of a defamation claim.  The majority of the challenged statements are simply not about Plaintiff Nicholas Sandmann or are not even defamatory.  Another large group of statements are nonactionable opinion rather than statements of fact.  And a careful review of the allegations and videos reveals that the remainder of the statements are true, not false.

On January 18, 2019, Sandmann traveled to Washington, DC from Kentucky, with his Covington Catholic High School classmates, to participate in the annual March for Life, a pro-life rally on the National Mall.  Afterward, chaperones instructed the students to gather on the steps of the Lincoln Memorial while they waited for buses to pick them up.  A short distance away, a group of protestors affiliated with the extremist Black Hebrew Israelite sect were staging a noisy demonstration.  Before long, the group began hurling insults at the students.

The students remained in close proximity to the protestors, who directed abusive remarks toward them for nearly an hour.  At that time, the students asked their chaperones if they could perform school spirit chants.  The chaperones assented, and the students began chanting and gesturing in the direction of the Black Hebrew Israelites, which was captured on video by bystanders with cameras and smartphones.

Nathan Phillips and other Native American activists, who had attended a different rally, saw the confrontation and decided to intervene by walking between the two groups.  Phillips and another activist chanted and played drums as they advanced.  This drew the attention of the

students, and some, including Plaintiff, began doing a "tomahawk chop" and laughing. Phillips subsequently approached Sandmann, who remained in place and stood facing the activist. Phillips said he felt threatened and perceived the students' behaviors as mocking his heritage.

Within twenty-four hours, millions saw video of the encounter on social media and reacted to it. This included the school and its governing body, the Diocese of Covington, Kentucky. On Saturday afternoon, January 19, 2019, the school and the Diocese issued an official statement that said, "[w]e condemn the actions of the Covington Catholic High School students toward Nathan Phillips specifically, and Native Americans in general."

CNN was one of many news organizations that reported on the incident and its viral aftermath. Over the days that followed, CNN continued its reporting, taking care to note additional facts as they developed and to share the perspectives of eyewitnesses and participants as they came forward. CNN's in-depth follow-up reporting included recordings that showed the extent of the Black Hebrew Israelites' hostility toward the students. When Sandmann released a written statement offering his own account of the day's events, CNN published that statement in full. CNN also reported on multiple statements issued by the Diocese and the school, the first condemning the students' conduct, the last an investigative report by Diocese-retained investigators that concluded the students had done nothing wrong.

Because Sandmann's Complaint does not identify any statement or alleged implication that can give rise to a defamation claim as a matter of law, the Court should dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND AND PROCEDURAL HISTORY

### A.     The January 18 Confrontation

As the Complaint alleges, Plaintiff Nicholas Sandmann traveled to Washington, DC with his classmates to participate in this year's March for Life, held on January 18, 2019. Compl.,

Doc. 1, ¶¶ 38, 123.  The March for Life is "an annual anti-abortion march from the Ellipse in

Washington, D.C. to the Supreme Court of the United States to protest the Court's decision in

*Roe v. Wade*."  *Pearson v. United States*, 581 A.2d 347, 349 (D.C. 1990).  Following the event,

Sandmann and his classmates were told to meet at the steps of the Lincoln Memorial on the

historic National Mall.  Compl. ¶ 39.  As the District of Columbia Circuit has described that

particular section of the Capital:

> [T]he Mall is more than home to . . . enduring symbols of our nationhood.  Its
> grassy expanse provides areas for any number of recreational activities, and its
> location in the heart of the nation's capital makes it a prime location for
> demonstrations.  It is here where Martin Luther King, Jr., delivered his famous "I
> Have a Dream" speech, where both sides of the abortion debate have staged
> passionate demonstrations, and where on any given day one may witness people
> gathering to voice their public concerns. . . .  It is here that the constitutional
> rights of speech and peaceful assembly find their fullest expression.

*Friends of the Vietnam Veterans Mem'l v. Kennedy*, 116 F.3d 495, 495-96 (D.C. Cir. 1997)

(internal marks and citation omitted).  At least two other groups chose this area of the National

Mall as the site for exercising their First Amendment rights that day.  One was a large group of

Native Americans "participating in the Indigenous Peoples March," including activist Nathan

Phillips.  Compl. ¶ 43.  The other was "a small group of adult men who describe themselves as

Black Hebrew Israelites – a recognized hate group."  *Id.* ¶ 41.

As the students gathered on the monument steps, several of the Black Hebrew Israelites

began "taunting" them with "vitriolic statements."  *Id.*  A video posted by one of the Black

Hebrew Israelites (the "Banyamyan Video") shows that Sandmann and his classmates responded

with a series of group cheers "in an effort to ignore and drown out the hate speech being hurled

at them."  *See* Banyamyan Video at 1:08:42-1:08:55; 1:09:47-1:10:07; Compl. ¶ 42.[1]

---

[1] The Complaint asserts that "[a]n accurate video as to what occurred on January 18, 2019, was
available online on January 19, 2019, when Shar Yaqataz Banyamyan, one of the Black Hebrew

3

Phillips and several other Native American activists decided to intervene by walking between the students and the Black Hebrew Israelites, and Phillips and another activist chanted and played drums as they advanced. *Id.* at 1:12:22-1:13:00. Many of the students first responded to the activists' approach by jumping up and down and chanting to the drum beat. *Id.*

According to a video of the confrontation published by Sandmann's counsel and referenced in the Complaint (the "Sandmann Video"), which purports to "accurately set[] forth the truth of the January 18 incident," Compl. ¶¶ 80-81, "[i]t was this moment that many feel the [Covington Catholic students] crossed the line and began mocking the Native Americans, by doing a move known to sports fans as the Tomahawk Chop." Sandmann Video at 4:14-28.[2] As the video shows, Sandmann joined in after glancing at a classmate who had begun making the "tomahawk chop" gesture. *Id.* at 4:18-21; Ex. 3 (images from Sandmann Video).

After walking back and forth in front of the students, Phillips turned towards the monument and stopped in front of Sandmann. Compl. ¶¶ 49-50; Sandmann Video at 4:29-4:40. Sandmann and Phillips then stood face-to-face for "several minutes." Compl. ¶ 52. Phillips continued to sing and play his drum during this time, while Sandmann faced him and remained still. *Id.* ¶¶ 52, 57. Sandmann's encounter with Phillips was captured on camera, and video of the scene went "viral on social media." *Id.* ¶ 73. One video of Sandmann and Phillips was viewed "at least" 2.5 million times within just a few days of the confrontation. *Id.* ¶ 69.

---

Israelites who was present for the encounter between Phillips and Nicholas, posted a 1 hour and 46-minute video," which is available at https://youtu.be/t3EC1_gcr34. Compl. ¶ 78 & n.1. As the video is incorporated by reference into the Complaint, the Court may consider it at the motion to dismiss stage. *Solo v. UPS Co.*, 819 F.3d 788, 794 (6th Cir. 2016). For the Court's convenience, CNN is filing a copy of the Banyamyan Video on DVD as Exhibit 1.

[2] The Sandmann Video, available at https://www.youtube.com/watch?v=lSkpPaiUF8s, also has been incorporated into the Complaint by reference. *See supra* note 1. For the Court's convenience, CNN is filing a copy of the Sandmann Video on DVD as Exhibit 2.

**B.      Official Reactions to the Confrontation**

Officials began reacting to the encounter on January 19.  Rep. Deb Haaland, one of the first Native American women elected to Congress, issued a statement criticizing "[t]he students' display of blatant hate, disrespect, and intolerance."[3]  Kentucky Secretary of State Alison Lundergan Grimes stated that she "was alarmed by circulating videos of young, Kentucky students taunting and harassing Native Americans at the Indigenous People's March."[4]

Also on January 19, the Diocese of Covington and Covington Catholic High School strongly condemned the students' conduct.  Compl. ¶ 87.  Their statement said in part:

> We condemn the actions of the Covington Catholic High School students towards Nathan Phillips specifically, and Native Americans in general, Jan. 18, after the March for Life, in Washington, D.C.  We extend our deepest apologies to Mr. Phillips.  This behavior is opposed to the Church's teachings on the dignity and respect of the human person.  The matter is being investigated and we will take appropriate action, up to and including expulsion.[5]

**C.      CNN's January 19-20 News Reports**

CNN telecast its first report about the confrontation after the Diocese had issued its statement, on the evening of January 19, during the weekly "Unfiltered" news and commentary program hosted by S.E. Cupp.  Compl. ¶¶ 149, 150.  The report characterized video of the encounter as "sweeping the Internet" and as showing Phillips and his companions being

---

[3] *See* https://twitter.com/repdebhaaland/status/1086662398071566337 (Jan. 19, 2019).  The Court may take judicial notice of a public official's statement on Twitter.  *See Regents of the Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476, 519 n.30 (9th Cir. 2018) (noting that district court took judicial notice of President Trump's statement on Twitter).

[4] *See* https://twitter.com/kysecofstate/status/1086709792972963841 (Jan. 19, 2019).

[5] The Diocese subsequently removed this statement from its website, but it remains available at https://web.archive.org/web/20190120071515/http://ccky.org/2019/01/statement-on-the-actions-of-covington-catholic-high-school-students/.  *See Pond Guy, Inc. v. Aquascape Designs, Inc.*, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("As a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for the taking of judicial notice." (collecting cases)).

"harassed and taunted by students from Covington Catholic High School, a private all-boys school in Kentucky." Ex. 4 at 0:02-06; 0:21-28.[6]  The report noted that "as the students clashed with another group, Phillips walked between them in an attempt to defuse the situation." *Id.* at 0:34-41.  It then reported that "the videos have drawn outrage from all corners," quoting the Diocese's statement and Rep. Haaland's Twitter post. *Id.* at 0:41-1:20.  The "Unfiltered" report did not name Sandmann.  A related message posted on the "SE Cupp Unfiltered" Twitter account that same day echoed Cupp's commentary and likewise did not name Sandmann. Compl., Ex. P.

Later that evening, CNN provided additional information about the encounter during the weekend edition of its "CNN Newsroom" program.  Compl. ¶ 140.  The report included portions of an interview with Phillips, in which Phillips provided his impressions and opinions about the encounter.  Phillips stated that, after he intervened between the students and the Black Hebrew Israelites, he realized, "Here's a group of people who were angry at somebody else, and I put myself in front of that."  Ex. 5 at 0:51-58.  Phillips also described approaching the "young fellow" later identified as Sandmann: "When I started going forward and that mass of groups of people started separating and separating and moving aside to allow me to move out of the way, or to proceed, this young fellow put himself in front of me and wouldn't move." *Id.* at 1:37-56.  Phillips added that he felt "fear for the next generations, fear where this country's going." *Id.* at 2:25-36.  The report also quoted the statements of Rep. Haaland and the Diocese. *Id.* at 3:05-41.

CNN published a digital news report about the encounter on January 19 as well, titled "Teens in Make America Great Again hats taunted a Native American elder at the Lincoln Memorial," which described the encounter and quoted the Diocese's statement.  Compl., Ex. G.

---

[6] Sandmann did not attach copies of CNN's challenged broadcasts to his Complaint and, instead, identified them by URL.  For the Court's convenience, CNN is filing a copy of the four challenged broadcasts on DVD as Exhibits 4 through 7.

This report did not identify Sandmann by name.  *Id.*  A message published that same day on CNN's Twitter account reported that "[v]ideo shows a crowd of teenagers wearing 'Make America Great Again' hats taunting a Native American elder after Friday's Indigenous Peoples March at the Lincoln Memorial."  Compl., Ex. Q.  CNN published that same text on its Twitter account again the following day.  Compl., Ex. R.

On the morning of January 20, CNN aired another report during the "New Day Weekend" program.  Compl. ¶ 175; Ex. 6.  The report referred to "a disturbing viral video" that "shows this group of teenagers harassing and mocking" Phillips and stated that he "saw a clash erupting" between the students and the Black Hebrew Israelites.  Ex. 4 at 0:04-32.  "New Day Weekend" then showed portions of the same interview with Phillips that CNN had aired the day before.  *Id*. at 0:38-3:15.  Like the prior CNN coverage, this report quoted Rep. Haaland's statement and noted that the Diocese "condemned those teens' actions."  *Id.* at 3:16-51.

On January 20, CNN also posted the "CNN Newsroom" video online, accompanied by a brief summary that stated, "Nathan Phillips, a Native American elder with the Omaha tribe, shares how he felt after he was mocked by a crowd of teenagers wearing 'Make America Great Again' hats during the Indigenous Peoples March in Washington."  Compl. ¶ 167 & Ex. H.

**D.      Sandmann's January 20 Statement**

On January 20, Sandmann released a statement identifying himself as the person who had stood eye-to-eye with Phillips, which CNN promptly published.  Compl. ¶ 84 & Ex. C. Sandmann's statement first provided his account of the Black Hebrew Israelites' confrontation with the Covington Catholic students, stating that the students' "chants were loud because [they] wanted to drown out the hateful comments that were being shouted at [them] by the protestors." Ex. C at 1.  Sandmann then recounted how "[t]he protestor everyone has seen in the video began

7

playing his drum as he waded into the crowd, which parted for him," and that he "did not see anyone try to block his path." *Id.*

Sandmann asserted that he "never felt like [he] was blocking the Native American protestor," and that Phillips "did not make any attempt to go around" him. *Id.* at 2. Sandmann also represented that he "was not intentionally making faces at the protestor," and that he "smile[d] at one point." *Id.* Sandmann added that he "did not witness any of [his] classmates" engaging in "chanting or acting in a racist fashion toward African Americans or Native Americans." *Id.* Sandmann claimed in this statement that he "did not make any hand gestures or other aggressive moves." *Id.* CNN anchor Jake Tapper posted Sandmann's statement in full on his CNN Twitter account that same day. *Id.* at 1-3.

**E.    CNN's January 21-22 News Reports**

On January 21, CNN published two more digital reports about the confrontation and its aftermath. The first, titled "Native American elder Nathan Phillips, in his own words," reported on CNN's interview with Phillips on January 19, "after the video went viral." Compl., Ex. I at 1. It noted that Sandmann "has denied characterizations of his and his classmates' behavior and said he was simply standing in front of Phillips to let him know he wouldn't be baited into an altercation," and provided readers with a complete copy of Sandmann's statement via hyperlink. *Id.*[7] The report then provided a transcript of the interview with Phillips that had been included in the earlier "CNN Newsroom" and "New Day Weekend" broadcasts. *Id.* at 1-7. CNN also posted a message on its Twitter account linking to that written report. Compl., Ex. S.

CNN's second digital publication on January 21, titled "A new video shows a different side of the encounter between a Native American elder and teens in MAGA hats," reported that

---

[7] *See* https://www.cnn.com/2019/01/20/us/covington-kentucky-student-statement/index.html.

the viral video "was a moment in a bigger story that is still unfolding."  Compl., Ex. J at 1.  It stated that "[a] new video that surfaced [on January 20] shows what happened before and after the encounter," providing readers with access to the complete Banyamyan Video via hyperlink. *Id.*; Compl. ¶ 78 & n.1.  The report then summarized the events depicted in the Banyamyan Video, interspersed with Sandmann's account of the incident.  Compl., Ex. J at 2-4.  The report again provided readers with a hyperlink to Sandmann's January 20 statement.  *Id.* at 2.

On January 22, CNN broadcast another televised report about Sandmann's statement during the nightly "Erin Burnett OutFront" program.  Ex. 7.[8]  The report noted that the White House had "voiced [its] support" for the Covington Catholic students.  *Id.* at 0:10-19.  The report also aired several video clips that NBC had released in advance of its interview with Sandmann, which was scheduled to air in full the following morning.  *Id.* at 0:50-1:10.  Among other things, Sandmann stated in those excerpts that "[a]s far as standing there, I had every right to do so."  *Id.*

F.  **Sandmann's January 23 Interview**

On January 23, NBC aired an interview with Sandmann on its "TODAY" program.  In this lawsuit, Sandmann characterizes that interview as his "detailed and accurate factual description of his encounter with Phillips."  Compl. ¶ 85.  Asked about his expression during the encounter, which "critics characterize as a smirk," Sandmann responded, "I see it as a smile saying that this is the best you're going to get out of me."  Ex. 8 at 3 (interview transcript).[9] Sandmann also stated, "I would say Mister Phillips had his right to come up to me.  I had my right to stay there."  *Id.*  Sandmann further represented that he "didn't see other students performing what appears to be a tomahawk chop."  *Id.*  Reporter Savannah Guthrie noted that

---

[8] The Complaint erroneously alleges that CNN aired this report on January 21, Compl. ¶ 190, but the difference in date is immaterial for purposes of this motion to dismiss.

[9] This NBC interview also is incorporated into the Complaint by reference.  *See supra* note 1.

"[t]he conflict has caught the President's attention," and that President Trump has "tweeted that Sandmann and his classmates were treated unfairly and have become symbols of fake news." *Id.* at 4.

**G.     CNN's January 23-25 News Reports**

From January 23 through 25, CNN published several more digital publications about the confrontation.  The first was a January 23 commentary by an Oglala Lakota and Chicano journalist titled "America mocks and dehumanizes natives at every turn," in which the author related that "when Sandmann was filmed smirking at Phillips as his raucous peers whooped and jeered in the background I wasn't surprised at all."  Compl., Ex. K at 1-2.  The author added:

> If you'd like to see more of the same rancid mockery – tomahawk-chopping,
> chanting, war-whooping, cultural appropriation, dummy drumming – all you have
> to do is attend a Cleveland Indians game or an Atlanta Braves game or a Kansas
> City Chiefs game or a Chicago Blackhawks game or, of course, a Washington
> NFL team game.

*Id.* at 1.  The second was a January 23 digital report, "Teen in Confrontation with Native American elder says he was trying to defuse the situation," which offered perspectives on the confrontation from Sandmann, Phillips, and Kaya Taitano, who recorded the original viral video. Compl. ¶ 66 & Ex. L.  There also was a two-sentence digital summary titled "Viral video sparks outrage" that accompanied the "Erin Burnett OutFront" video.  Compl. ¶¶ 217-19 & Ex. M.  It stated in full:

> A viral video of a standoff between a Native American elder and Catholic school
> teens at the Lincoln Memorial has sparked outrage; but as with any viral video,
> there is more to the story than what you see online.  CNN's Sara Sidner reports.

*Id.*  The fourth digital publication, published on January 24 and titled "Native American elder from viral staredown says teen's response is coached, insincere," reported about an interview that Phillips conducted with NBC's "TODAY" the day after Sandmann's interview on the same

10

program.  Compl., Ex. N.  The report stated that "[a]fter listening to 30 to 40 seconds of Sandmann's lengthy interview, Phillips decided he didn't need to hear anymore," and that "Phillips said he believes Sandmann's statements were crafted by [a] public relations firm."  *Id.* at 1.  Phillips specifically mentioned "the tomahawk chop, the mocking, those things" as among the reasons he felt that Sandmann "needs to apologize."  *Id.*

The fifth digital report, published on January 25 and titled "Kentucky Catholic diocese apologizes for condemning students in viral video with Native American elder," noted that days after condemning the students' actions, the Diocese reversed course.  The Diocese maintained it had been "'bullied and pressured' into making a premature statement about [the] viral video," and was "awaiting the results of [an] investigation into the incident."  Compl., Ex. O at 1-2.

## H.    The Diocese's "Final Investigative Report"

On February 11, the Diocese of Covington released a written report about the January 18 confrontation, which was prepared by a private investigation firm that had been retained by the Diocese's outside counsel.  Compl. ¶¶ 89-91 & Ex. D.  Titled "Final Investigative Report," the document stated that – while investigators "found no evidence of offensive or racist statements made by students to Mr. Phillips or members of his group" – at least "[s]ome students performed a 'tomahawk chop'" gesture.  Compl., Ex. D at 2.[10]

## I.    Sandmann's Complaint Against *The Washington Post*

On February 19, Sandmann filed a lawsuit against *The Washington Post*, claiming that the paper defamed him through its reporting about the January 18 incident.  *See* Compl., *Sandmann v. WP Company LLC*, No. 2:19-cv-0019-WOB-CJS (E.D. Ky. Feb. 19, 2019), Doc. 1.

_____

[10] CNN also covered the Diocese's report.  *See* https://www.cnn.com/2019/02/13/us/covington-catholic-high-school-report/index.html.

In that suit, Sandmann "seeks money damages in excess of Two Hundred and Fifty Million Dollars ($250,000,000.00)," which Sandmann pegs to the amount that the *Post*'s current owner paid to purchase the paper in 2013. *Id.* ¶ 19. The *Post* has subsequently moved to dismiss his claim under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss, *Sandmann v. WP Company LLC*, No. 2:19-cv-0019-WOB-CJS (E.D. Ky. Apr. 9, 2019), Doc. 27.

**J.      Sandmann's Complaint Against CNN**

On March 12, Sandmann filed his Complaint against CNN. *See generally* Compl. Sandmann claims that CNN defamed him through 17 publications – four broadcast reports, nine written reports, and four Twitter postings – about the January 18 confrontation and its aftermath. *Id.* ¶ 138. In this case, Sandmann seeks $275 million in compensatory and punitive damages. *Id.* ¶¶ 36-37. Pursuant to Rule 12(b)(6), CNN now moves to dismiss the Complaint with prejudice for failure to state a claim upon which relief can be granted.

## ARGUMENT

Sandmann's 57-page, 295-paragraph Complaint essentially takes issue with any and every point of CNN's reporting. It challenges dozens of statements that CNN broadcast or published in its news reports, as well as several purported implications that Sandmann claims those reports convey about him. Compl. ¶¶ 139-245. For the convenience of the Court, CNN organized the 53 discrete statements the Complaint alleges into a chart attached as Exhibit 9, and CNN will refer to the statements by those numbers for ease of reference.

Despite Sandmann's voluminous Complaint, he has not adequately pleaded, and as a matter of law cannot show, that CNN reported a single statement of fact about him that was false and defamatory. Sandmann similarly has not pleaded, and as a matter of law cannot show, that CNN's reports *reasonably* convey any false and defamatory implications about him or that the

reports themselves show that CNN *intended* to convey such implications.  The Court therefore should dismiss Sandmann's Complaint with prejudice.

## I.    STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "Determining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *Id.*

Courts have further recognized that, in addition to requiring the application of post-*Iqbal* pleading standards, evaluating whether a defamation claim suffices as a matter of law is an issue of constitutional importance.  As then-Judge Kavanaugh explained:

> The First Amendment guarantees freedom of speech and freedom of the press. Costly and time-consuming defamation litigation can threaten those essential freedoms.  To preserve First Amendment freedoms and give reporters . . . the breathing room they need to pursue the truth, the Supreme Court has [therefore] directed courts to expeditiously weed out unmeritorious defamation suits.

*Kahl v. BNA, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 366 (2017).  The Supreme Court of Kentucky likewise has noted that, because the burdens of litigation can chill a free and independent press, "[c]ourts should resolve free speech litigation more expeditiously whenever possible."  *Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 729 (Ky. 1999) (citation omitted).

Because courts resolve most defamation claims based on the allegedly defamatory words themselves, this constitutionally critical task can be relatively straightforward. "[U]nlike in most litigation, in a libel suit the central event – the communication about which suit has been brought – is ordinarily before the judge at the pleading stage," so the judge "may assess it upon a motion to dismiss, firsthand and in context." *See* 2 Robert D. Sack, Sack on Defamation § 16.2.1 (5th ed. 2018). "Thus, courts routinely consider, on motions to dismiss . . . issues such as whether the statement at bar is capable of bearing a defamatory meaning [and]. . . whether it is 'of and concerning' the plaintiff, . . . and they frequently grant motions on these grounds and others." *Id.*; *see also Ogle v. Hocker*, 279 F. App'x 391, 397 (6th Cir. 2008) ("Whether a statement is capable of carrying a defamatory meaning is a question for the court.").

Under the threshold review the law requires, this Court should find, as a matter of law, that Sandmann's Complaint fails to state a plausible claim, and dismiss this case with prejudice.

## II.   NONE OF THE CHALLENGED STATEMENTS CAN GIVE RISE TO A PLAUSIBLE DEFAMATION CLAIM

In Kentucky, a defamation plaintiff must establish, among other elements, that the defendant published "a false and defamatory statement" that was "concerning" him. *Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 472-73 & n.3 (Ky. Ct. App. 2017) ("A statement that is false, but not defamatory is not actionable; a statement that is true is not actionable even if defamatory."). None of the statements that Sandmann challenges can satisfy these requirements.

### A.   Statements That Are Not About Sandmann Are Not Actionable

Forty of the fifty-three statements Sandmann challenges[11] simply are not "of and concerning" him – *i.e.*, they are not about him. Both the U.S. Constitution and the common law

---

[11] 1, 2, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 41, 43, 45, 46, 50, 52, and 53.

mandate that a challenged statement must be "of and concerning" the plaintiff, otherwise, it is not actionable as defamation. In *New York Times v. Sullivan*, for instance, the Supreme Court found the ruling on appeal to be "constitutionally defective" because plaintiff, a Montgomery, Alabama police supervisor, could not show that the challenged statements were of and concerning him as they merely "referr[ed] to the police" in Montgomery. 376 U.S. 254, 288-90 (1964); *see also Rosenblatt v. Baer*, 383 U.S. 75, 80-83 (1966) (under *Sullivan*, a plaintiff "would be required to show specific reference" to satisfy the "of and concerning" requirement).

### 1.  Kentucky does not recognize group libel

The courts further hold that because a challenged statement must be "of and concerning" the plaintiff, a statement about a sufficiently large group does not, as a matter of law, furnish a claim to any individual member of that group. Kentucky federal and state courts uniformly and repeatedly reject defamation claims under this "group libel" rule. In *O'Brien v. Williamson Daily News*, for instance, the court held that the "group libel" doctrine barred plaintiffs' defamation claim arising from a statement about a group of twenty-nine people. 735 F. Supp. 218, 222-23 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991). Similarly, in *Loftus v. Nazari*, 21 F. Supp. 3d 849, 854 (E.D. Ky. 2014), this Court rejected a physician plaintiff's argument that "derogatory remarks about the medical profession should be interpreted as statements about her" personally. *See also Ky. Fried Chicken of Bowling Green, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) (rejecting restaurant owner's defamation claim over statement "discussing Kentucky Fried Chicken generally"); *Louisville Times v. Stivers*, 68 S.W.2d 411, 412-13 (Ky. 1934) (rejecting defamation claim by member of Stivers family over statement about "the Stivers clan").

Here, most of the claims arise from statements about the Covington Catholic students as a group. In Statement 21, for example, CNN reported that "Taitano said the whole incident started

when the teens and four young African-Americans, who'd been preaching about the Bible nearby, started yelling and calling each other names."  Compl. ¶ 165(e).  In Statement 5, CNN reported that "Phillips was beating his drum and singing an American Indian protest song . . . when he saw a clash erupting between a group of teenaged students and four African American young men preaching about the bible and oppression."  *Id.* ¶ 148(e).  And in Statement 29, CNN reported that "Phillips described what he felt was hatred coming from the young people in the crowd, who are pupils at Covington Catholic School in Kentucky."  *Id.* ¶ 189(b).

Under Kentucky law and the U.S. Constitution, these statements about a group of dozens of students are not "of and concerning" any single member of that group.  Sandmann therefore has no cause of action as to the bulk of the statements he challenges.  The Court should dismiss Sandmann's lawsuit as to each of these statements for failure to state a plausible claim.

**B.    Statements That Are Not Defamatory Are Not Actionable**

Twenty-three of the challenged statements here[12] cannot support a defamation claim for the additional, essential reason that they do not convey a defamatory meaning.  Under Kentucky law, a statement "is defamatory if it tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation."  *Kimball v. Courier Journal, Inc.*, 2009 WL 3321380, at *2 (Ky. Ct. App. Oct. 16, 2009) (citation omitted); *Shields v. Booles*, 38 S.W.2d 677, 682 (Ky. 1931) (a "statement [that] had no inherent tendency to affect [plaintiff's] character or reputation" is "not a libel of [plaintiff], even though the statement was not true").

On a motion to dismiss the Court should find that a statement is not actionable where it does not bear a defamatory meaning.  *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 862-63 (6th

---

[12] 2, 3, 5, 7, 8, 11, 13, 14, 20, 21, 23, 24, 25, 26, 30, 36, 37, 38, 44, 45, 46, 49, and 50.

Cir. 2003) (affirming dismissal where statement "did not expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society" (internal marks and citation omitted).

Statement 26, for example, is the headline "Native American man confronted by teens speaks out." Compl. ¶ 172(a). Setting aside that this statement is not of and concerning Sandmann, and that it is substantially true, it cannot be defamatory as a matter of law to characterize a concededly boisterous encounter as a "confrontation." *See Bates v. N.Y. Times Co.*, 1993 WL 557891, at *3 (W.D. Ky. Sept. 23, 1993) (granting motion to dismiss where statement was not defamatory because it was "merely descriptive"). Similarly, in Statement 50, CNN quoted Phillips as saying, "When I put myself in prayer and used that drum to reach God, that mass of young men surrounded me and the folks that were with me." Compl. ¶ 227(e). It is not defamatory to say that a group of people merely "surrounded" someone else, which in any event is a substantially true account of the encounter.

CNN's reporting also was not defamatory in Statement 20, which states that "Kaya Taitano, who shot the viral video, said the teens were chanting 'Build the wall' and 'Trump2020.'" Compl. ¶¶ 165(d), 201(d), 216(d). In addition to not being of and concerning Sandmann, it is not defamatory to say that Sandmann expressed support for the President or that he echoed a signature slogan of a major political party. *See Cox v. Hatch*, 761 P.2d 556, 562 (Utah 1988) (implication that plaintiff supported U.S. Senator, even if false, is not defamatory where Senator is part of "a mainstream party and not at odds with the fundamental social order").

17

These and other challenged statements are simply too commonplace and reasonably inoffensive, as a matter of law, to give rise to a defamation claim. The Court should also dismiss Sandmann's lawsuit as to each of these statements for failure to state a plausible claim.

## C.    Statements Of Opinion Are Not Actionable

Many of the statements that Sandmann challenges also are not actionable because they are statements of opinion, rather than statements of fact. The First Amendment shields two forms of opinion from defamation liability. One is an expression of purely subjective opinion, because "a viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts." *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007). Based on that principle, the Sixth Circuit rejected a defamation claim arising out of a "credit rating" because such an "inherently subjective" communication created no "fact-based inferences" that could be "proven false." *Id.* Similarly, in *Seaton v. TripAdvisor LLC*, the Sixth Circuit affirmed dismissal of a defamation claim based on defendant's placement of a property owned by plaintiff on a list of "dirtiest" hotels. 728 F.3d 592, 598-601 (6th Cir. 2013). As the court explained, even if defendant's methodology was flawed in the eyes of some, a defamation claim cannot arise as a matter of law out of such an "inherently subjective" and ultimately unfalsifiable statement of opinion. *Id.*

The other type of opinion that the First Amendment absolutely protects is a conclusion based on disclosed facts. In *Lassiter v. Lassiter*, for example, this Court held that defendant's allegations that plaintiff committed adultery could not give rise to a defamation claim because "[t]he facts on which [defendant] based the conclusion were disclosed in the book," and thus "[t]he reader is in as good a position as the author to judge whether the conclusion she reached – that adultery had been committed – was correct." 456 F. Supp. 2d 876, 882 (E.D. Ky. 2006), *aff'd*, 280 F. App'x 503 (6th Cir. 2008); *accord Loftus*, 21 F. Supp. 3d at 853 (this Court held

that challenged conclusions were not actionable where defendant did "not imply the existence of any undisclosed facts" and thus "[t]he reader of the postings may decide for himself or herself whether the opinions should be accepted").

### 1. Subjective expressions of opinion cannot give rise to a defamation claim

Thirty-four of the statements that Sandmann challenges here[13] are purely subjective statements.  For example, Statement 19 purely reflects the speaker's point of view: "'I did not feel safe in that circle,' said Kaya Taitano, a student at the University of the District of Columbia who participated in the march and shot the videos."  Compl. ¶¶ 165(c), 216(d).  Whether Taitano "felt safe" is an "inherently subjective" expression of opinion that cannot possibly be "proven false."  *See Compuware*, 499 F.3d at 529.  Likewise, Statement 29 – "Phillips described what he felt was hatred coming from the young people in the crowd, who are pupils at Covington Catholic School in Kentucky," Compl. ¶ 189(b) – is a purely subjective expression of Phillips's perception, which cannot be proven false.  Statement 44, which characterizes Sandmann as "filmed smirking at Phillips as his raucous peers whooped and jeered in the background," Compl. ¶ 207(e), is similarly nonactionable, because whether Sandmann was "smirking" or "smiling" is beyond adjudication.  *Cf. Piccone v. Bartels*, 785 F.3d 766, 772 (1st Cir. 2015) (calling "Plaintiffs' behavior unprofessional" is "a quintessential expression of personal judgment which is subjective in character" (internal marks, alterations, and citation omitted)).

### 2. Conclusions based on disclosed facts cannot give rise to a defamation claim

Nine of the challenged statements[14] are not actionable because they are opinions based on disclosed facts.  For example, Statement 15 is Native American attorney Chase Iron Eyes'

---

[13] 4, 6, 9, 10, 12, 13, 16, 17, 18, 19, 22, 23, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 41, 42, 43, 44, 47, 48, 51, 52, and 53.

[14] 4, 10, 15, 18, 22, 27, 41, 42, and 47.

expression:  "As an attorney I felt that this qualified as a legal definition of assault.  They were causing an apprehension, an objective fear of offensive contact or harm."  Compl. ¶ 157(g).  Because Iron Eyes discloses the basis for his conclusion and allows the viewer to "decide for himself or herself whether the opinion[] should be accepted," this statement is nonactionable.  *Lassiter*, 456 F. Supp. 2d at 882; *Loftus*, 21 F. Supp. 3d at 853.

And some statements, such as Statement 18, which reported that "[a] crowd of teenagers surrounded a Native American elder and other activists and appeared to mock them after Friday's Indigenous Peoples March at the Lincoln Memorial," Compl. ¶ 216(b), are not actionable both because they are purely subjective and because they are based on disclosed facts.  The conclusion that the teenagers "appeared to mock" the activists is based on recordings of the encounter itself, and thus any viewer was "in as good as position as [CNN] to judge whether the conclusion [it] reached . . . was correct."  *Lassiter*, 456 F. Supp. 2d at 882.  Characterizing a given activity as "taunting" also is too subjective to be verifiably false.  *Turner v. Wells*, 879 F.3d 1254, 1270 (11th Cir. 2018) (characterizing plaintiff's behavior "as homophobic taunting is subjective and not readily capable of being proven true or false").

### 3.  Characterizing someone as racist is a nonactionable opinion as a matter of law

Courts treat statements characterizing people as "racist" as nonactionable opinion because they cannot be proved true or false.  This principle was reaffirmed just months ago in another defamation case where a minor plaintiff sued the press over alleged implications of racism arising out of his perceived support for President Trump.  In *McCafferty v. Newsweek Media Group, Ltd.*, plaintiff and his parents sued *Newsweek* over a report titled "Trump's Mini-Mes," alleging in part that the report implied plaintiff "supported or defended racism."  2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019), *appeal filed*, No. 19-1545 (3d Cir. Mar. 12, 2019).  The

court dismissed the complaint, holding that the report did not reasonably convey any implication of racism – and that even if it did, "labeling someone a racist without more, though undoubtedly uncomplimentary, is non-actionable opinion."  *Id.* at *5.[15]

Here, Sandmann frames a portion of his defamation claim, Statement 42, around a guest column posted on CNN's website and clearly labeled "commentary" and "opinion," about "the racist disrespect of Nathan Phillips, a Native American elder, by Nick Sandmann and his MAGA-hat clad classmates of Covington Catholic High School."  Compl. ¶ 207(c).  As the precedent reflects, Sandmann cannot as a matter of law base a defamation claim on this statement as it offers an expression of opinion so subjective as to be unprovable.  Moreover, Sandmann's counsel has conceded that "many feel the [students] crossed the line and began mocking the Native Americans" when they performed the "tomahawk chop" chant, *see* Sandmann Video at 4:14-28, and video shows that Sandmann was one of the students who participated in that "tomahawk chop," *see id.* at 4:18-21; Ex. 3.  Viewing Sandmann's behavior as "racist disrespect" is thus an opinion held by "many," according to his own counsel.[16]  The

---

[15] *See also Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face," and thus falls "comfortably within the immunity for name-calling."); *Squitieri v. Piedmont Airlines, Inc.*, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false." (collecting cases)); *Forte v. Jones*, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("the allegation that a person is a 'racist' . . . is not actionable because the term 'racist' has no factually-verifiable meaning"); *Edelman v. Croonquist*, 2010 WL 1816180, at *6 (D.N.J. May 4, 2010) ("characterization of [plaintiffs] as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation").

[16] The unpublished decision in *Armstrong v. Shirvell*, 596 F. App'x 433 (6th Cir. 2015), is readily distinguishable.  In that case, the court held that the "general tenor" of plaintiff's unfounded accusation of racism was an actionable statement of fact.  *Id.* at 441-42.  In the clearly labeled opinion piece at issue here, the phrase "racist disrespect" was explicitly based on the Native American author's perception of the viral video showing the students' conduct in the presence of Phillips, including "tomahawk chopping."  *See* Sandmann Video at 4:14-28.

Court should dismiss Sandmann's lawsuit as to this statement as well for failure to state a plausible claim.

## D.     True Statements Are Not Actionable

Finally, the Constitution places the burden on a defamation plaintiff like Sandmann to prove that the statements he challenges are *materially* false, such that they "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (citation omitted). Literal falsity is insufficient "so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* at 517 (internal marks and citations omitted).

Sandmann's Complaint challenges just a few statements of fact that actually are about him, *see supra* pp. 14-16, and, as the record before the Court reflects, those are all true. A total of twenty-six statements are not actionable because they are substantially true.[17] Statement 3, for instance, is the sentence, "Native American War Vet: 'This Young Fella Put Himself In Front Of Me And Would Not Move.'" Compl. ¶¶ 148(c), 172(c)(iii). By Sandmann's own account, that statement is substantially true: he did not move when he came face-to-face with Phillips on the monument steps. Ex. 8 at 3 ("I would say Mister Phillips had his right to come up to me. I had my right to stay there."). Similarly, in Statement 40, CNN quoted Phillips as saying, "I have read the statement from Nick Sandmann, the student who stared at me for a long time. He did not apologize, and I believe there are intentional falsehoods in his testimony." Compl. ¶¶ 194(a), 194(b). As shown above, Sandmann's January 20 statement and January 23 interview did contain claims that were untrue: Sandmann represented that he did not make gestures toward Phillips, but video shows Sandmann making a "tomahawk chop" gesture. Sandmann Video at

---

[17] 1, 3, 4, 5, 7, 8, 10, 11, 12, 14, 17, 18, 22, 24, 26, 28, 33, 34, 40, 41, 44, 47, 49, 50, 51, and 53.

4:18-21; Ex. 3.  Phillips's statement on this point was substantially true and cannot support a defamation claim.

Sandmann's participation in the "tomahawk chop" also renders nonactionable Statement 47, in which the CNN commentator wrote that "Sandmann intentionally mocked a native elder for the entertainment of his friends, got caught, and still won't apologize."  Compl. ¶ 207(h). Whether because it is substantially true or because it is a subjective opinion, characterizing a young man's "tomahawk chop" toward a Native American as mockery cannot give rise to a defamation claim.  *Turner*, 879 F.3d at 1264 (describing behavior as "taunting" is a "subjective assessment" that is nonactionable as a matter of law).  Sandmann's counsel concedes as much in stating that "many feel the [students] crossed the line and began mocking the Native Americans" when they performed a "tomahawk chop" chant.  *See* Sandmann Video at 4:14-28.

The Supreme Court has made it clear that "[t]he sine qua non of recovery for defamation . . . is the existence of falsehood."  *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974).  Sandmann fails to demonstrate the falsity of any statement that CNN made about him, and his defamation claim therefore should be dismissed for that reason as well.

## III.    NONE OF CNN'S REPORTS CAN GIVE RISE TO A PLAUSIBLE DEFAMATION-BY-IMPLICATION CLAIM

In addition to challenging statements that are not defamatory, Sandmann attempts to allege libel-by-implication, but he cannot satisfy his rigorous constitutional pleading burden.

Because of the First Amendment concerns that arise in implication lawsuits, the Sixth Circuit requires plaintiffs to surmount a demanding two-prong test.  They must demonstrate, as a matter of law, that (1) the defendant "*intended* or *knew* of the implied messages [plaintiff] attributes to the [challenged publication]," and that (2) "an *objective* reader of the [publication]

23

might discern these hidden implications." *Compuware*, 499 F.3d at 528-29 (emphases added) (rejecting defamation-by-implication claim under this test).  As a result of this bar, a "defendant is not responsible for every defamatory implication a reader might draw from his report of true facts, absent evidence that he intended the defamatory implication." *Nichols v. Moore*, 477 F.3d 396, 402 (6th Cir. 2007) (internal marks, alteration, and citation omitted).

Here, Sandmann claims that CNN's reports convey nine alleged implications:

1. Sandmann "instigated a confrontation with Phillips and otherwise engaged in racist conduct," Compl. ¶¶ 143, 168, 177, 197, 204, 210, 223, 230;

2. Sandmann "instigated a confrontation with Phillips and the Black Hebrew Israelites and otherwise engaged in racist conduct," *id.* ¶¶ 152, 160, 185;

3. Sandmann "assaulted Phillips," *id.* ¶¶ 144, 153, 162, 170, 178, 199, 212, 225, 232;

4. Sandmann "assaulted Phillips and the Black Hebrew Israelites," *id.* ¶ 187;

5. Sandmann "engaged in racist taunts," *id.* ¶¶ 145, 154, 161, 169, 186, 198, 205, 211, 224, 231

6. Sandmann "engaged in racist conduct and racist taunts," *id.* ¶¶ 238, 241;

7. Sandmann's "behavior violated the fundamental standards of his religious community," *id.* ¶¶ 146, 155, 163, 180, 213;

8. Sandmann's "behavior violated the policies of his school such that he should be expelled," *id.* ¶¶ 147, 156, 164, 214; and

9. Sandmann "intentionally lied about the January 18 incident," *id.* ¶ 193.

Even if CNN's reports conveyed these alleged implications, most are nonactionable for the same reasons that Sandmann could not base a claim on any of the challenged statements:

**Opinion**:  Like the statement criticizing "the racist disrespect of Nathan Phillips . . . by Nick Sandmann," Alleged Implications 1, 2, 5, and 6 are subjective expressions of opinion to the extent they characterize Sandmann as a racist.  *See supra* pp. 18-21.  Alleged Implications 7 and

24

8 are also subjective expressions of opinion: it is hard to imagine a more subjective judgment than whether behavior "violate[s] the fundamental standards of [a] religious community."

**Defamatory Meaning**:  Alleged Implications 1 and 2 also are nonactionable in that, just as it is not defamatory to characterize Sandmann's encounter with Phillips as a "confrontation," it cannot be defamatory to imply that Sandmann *instigated* a confrontation.  *See supra* pp. 1.

**Truth**:  Alleged Implication 9 is nonactionable because it is true.  As shown above, Sandmann said that he did not participate in the "tomahawk chop" on January 18.  But the video that Sandmann represents as "set[ting] forth the truth," Compl. ¶ 81, makes plain that Sandmann joined his classmates in that gesture, which many consider offensive.  *See supra* pp. 4, 22-23.

Finally, as for Alleged Implications 3 and 4, none of the CNN reports at issue reasonably convey that Sandmann ever "assaulted" anyone – either in the way CNN described the encounter or in the video excerpts CNN published.  Nor can Sandmann point to anything on the face of CNN's reports suggesting that CNN ever *intended* to convey such an implication.  Because "only a 'strained reading'" of CNN's reporting "would permit the inferences [Sandmann] would have [the Court] draw," *Compuware*, 499 F.3d at 529 (citation omitted), Sandmann has failed to satisfy this Circuit's stringent test for bringing a defamation claim with respect to this alleged implication.

Sandmann's theory of defamation-by-implication, like his traditional defamation claim, cannot survive a motion to dismiss.  This Court should also dismiss this claim with prejudice.

## **CONCLUSION**

For the foregoing reasons, CNN respectfully requests that the Court dismiss the Complaint with prejudice and grant such other and further relief as it deems just and proper.

Respectfully submitted,

Charles D. Tobin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

/s/ James E. Burke
James E. Burke (*pro hac vice*)
Sarah V. Geiger (KBA No. 96173)
Amanda B. Stubblefield (KBA No. 96213)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
sgeiger@kmklaw.com
astubblefield@kmklaw.com

*Counsel for Defendant Cable News Network, Inc.*

26