**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

| | | |
|---|---|---|
| **NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,** | : | **CASE NO. 2:19-CV-31-WOB-CJS** |
| | : | **JUDGE WILLIAM O. BERTELSMAN** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CABLE NEWS NETWORK, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................. 4

    I.    Nicholas Was a Victim, Not an Aggressor, at the January 18 Incident. .......................... 4

    II.    Nicholas Was a Victim of CNN's Negligent Reporting. ................................. 7

        A.    CNN's First Broadcast and Second Article Were False and Defamatory. ................. 7

        B.    CNN's Second Broadcast and First Tweet Were False and Defamatory. ................... 9

        C.    CNN's First Online Article and Second Tweet Were False and Defamatory. .......... 11

        D.    CNN's Third Broadcast Was False and Defamatory. ................................. 12

        E.    CNN's Third Article and Fourth Tweet Were False and Defamatory. ...................... 13

        F.    CNN's Fourth Broadcast and Seventh Article Were False and Defamatory. ............. 15

        G.    CNN's Fourth Article Was False and Defamatory. ................................... 15

        H.    CNN's Fifth Article Was False and Defamatory. ...................................... 16

        I.    The Sixth Article and Third Tweet Were False and Defamatory. ........................... 17

        J.    CNN's Eighth Article Was False and Defamatory. .................................... 18

        K.    CNN's Ninth Article Was False and Defamatory. ...................................... 19

    III.    Investigations by the Diocese and an Independent Investigator Establish Falsity. ....... 19

**ARGUMENT** ......................................................................................................... 19

    I.    Legal Standards to Be Applied. ............................................................ 20

        A.    All Allegations of the Complaint Must be Taken as True. .......................... 20

        B.    "Of and Concerning" Is a Jury Issue if There Is Any Ambiguity............................ 20

        C.    Defamatory Meaning Is a Jury Issue if There Is Any Ambiguity.............................. 21

        D.    Truth or Falsity Is a Jury Issue Except in the Clearest Cases. .................... 21

    II.    CNN's Publications Are "Of and Concerning" Nicholas. ............................... 22

i

A.     Nicholas Does Not Rely on His Status as a Member of the CovCath Group to Confer Standing and the Group Libel Doctrine is Therefore Inapplicable............................. 23

B.     Nicholas Was Identified by Name, Photograph, and Descriptive Circumstances. ..... 24

III.   CNN's Publications Are Capable of a Defamatory Interpretation. ............................... 28

IV.   CNN's Publications Are Not Protected Opinion. ........................................................ 31

A.     CNN Accused Nicholas of Engaging in Objectively Verifiable Conduct. ................. 32

B.     CNN's Accusations Are Not Protected Opinions Based on Disclosed Facts. ............ 35

V.     CNN's Accusations Are False. ..................................................................................... 37

VI.   Defamation by Implication .......................................................................................... 40

**CONCLUSION** ..................................................................................................................... 40

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Araya v. Deep Dive Media, LLC*, 966 F. Supp. 2d 582 (W.D.N.C. 2013) .................................. 20

*Armstrong v. Shirvell*, 596 F. App'x 433 (6th Cir. 2015) ........................................................ 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ................................................................................. 20

*Baker v. Kuritzky*, 95 F. Supp. 3d 52 (D. Mass. 2015) ........................................................... 32

*Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732 (Ky. Ct. App. 2004)....................... 28

*Boyles v. Mid-Florida Television Corp.*, 431 So. 2d 627 (Fla. Dist. Ct. App. 1983), *approved*,

     467 So. 2d 282 (Fla. 1985)......................................................................................... 30, 34

*Carey v. CSX Transportation, Inc.*, 2019 WL 181120 (E.D. Ky. Jan. 11, 2019) ....................... 35

*Cheney v. Dailey News L.P.*, 654 Fed. App'x 578 (3d Cir. 2016)............................................... 26

*Church of Scientology v. Flynn*, 744 F.2d 694 (9th Cir. 1984)................................................... 23

*Clark v. American Broadcasting Companies, Inc.*, 684 F.2d 1208 (6th Cir. 1982) .............. 26, 28

*Clark v. Viacom Intern. Inc.*, 617 Fed. App'x 495 (6th Cir. 2015) ............................................. 22

*Compuware Corp. v. Moody's Investor Services, Inc.*, 499 F.3d 520 (6th Cir. 2007) .......... 34, 35

*Cromity v. Meiners*, 494 S.W.3d 499 (Ky. Ct. App. 2015) ....................................................... 31

*Desai v. Charter Commc'ns, LLC*, 2018 WL 297599 (W.D. Ky. January 4, 2018).................... 21

*E.W. Scripps Co. v. Cholmondelay*, 469 S.W.2d 700 (Ky. Ct. App. 1978)................................. 23

*Fortney v. Guzman*, 482 S.W.3d 784 (Ky. Ct. App. 2015)........................................................ 30

*Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302 (Ky. 2010). ....................................................... 20

*Holmes v. Curtis Pub. Co.*, 3030 F. Supp. 522 (D.S.C. 1969) ................................................. 26

*Jackson v. Consumer Publ'ns*, 11 N.Y.S.2d 462 (App. Div. 1939) ............................................ 26

*Jacobs v. Ethel Walker School Inc.*, 2003 WL 22390051 (Conn. Super. Ct. Sept. 30, 2003)...... 34

*Ky. Kingdom Amusement Co. v. Belo Ky., Inc.*, 179 S.W.3d 785 (Ky. 2005) ................. 21, 28, 37

*Lasky v. American Broadcasting Companies, Inc.* 631. F. Supp. 962 (S.D.N.Y. 1986) ............. 28

*Loftus v. Nazari*, 21 F. Supp. 3d 849 (E.D. Ky. 2014).................................................................. 27

*Louisville Times v. Strivers*, 68 S.W.2d 411 (Ky. 1934) ............................................................ 23

*Marcum v. G.L.A. Collection Co. Inc.*, 646 F. Supp. 2d 870 (E.D. Ky 2008)............................. 22

*Marr v. Putnam*, 196 Or. 1 (1952). ..................................................................................... 20, 24

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991)....................................................... 37

*McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981)....... 4, 19, 29, 40

*Milkovich v. Lorain Journal*, 497 U.S. 1 (1990)............................................................. 31, 35, 36

*Mullenmeister v. Snap-On Tools Corp.*, 587 F. Supp. 868 (S.D.N.Y. 1984) .............................. 30

*Nappier v. Jefferson Standard Life Ins. Co.*, 322 F.2d 502 (4th Cir. 1963) ................................ 25

*Nichols v. Moore*, 477 F.3d 396 (6th Cir. 2007)......................................................................... 40

*Nicholson v. Rust*, 52 S.W. 933 (Ky. 1899) ................................................................................. 4

*O'Brien v. Williamson Daily News*, 735 F. Supp. 218 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th

    Cir. 1991) ........................................................................................................... 21, 24, 27

*Overhill Farms, Inc. v. Lopes*, 190 Cal. App. 4th 1248 (2010) .................................................. 33

*Peck v. Tribune Co.*, 214 U.S. 185 (1909).................................................................................. 25

*Robinson v. United States*, 506 A.2d 572 (D.C. 1986) ............................................................... 32

*Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 1994 WL 413394 (Mich. Cir. Ct. Jan. 4,

    1994) ................................................................................................................................. 30

*Smith v. United States*, 593 A.2d 205 (D.C. 1991) ..................................................................... 32

*Stanton v. Metro Corp.*, 357 F. Supp. 2d 369 (D. Mass. 2005), *rev'd on other grounds*, 438 F.3d

    119 (1st Cir. 2006) ...................................................................................................... 24, 25

*Stanton v. Metro Corp.*, 438 F.3d 119 (1st Cir. 2006)......................................................... 24, 25, 26

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781 (Ky. 2004), *overruled on other grounds by*

    *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)....................................... 22, 23, 38

*Toikka v. Jones*, 2013 WL 978926 (E.D. Ky. 2013)..................................................... 30

*Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)......................................... 22, 30

*Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383 (8th Cir. 1996)...... 40

*United States v. Hoxsey*, 17 M.J. 964 (A.F.C.M.R. 1984)........................................... 34

*Wallace v. Media News Group, Inc.*, 568 Fed. App'x 121 (3d Cir. 2014) ................................. 25

*Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724 (Ky. 1999)................................. 31

*Williams v. Blackwell*, 487 S.W.3d 451 (Ky. Ct. App. 2016), *as modified* (Mar. 4, 2016).......... 31

*Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989)....................................... 21, 31, 32, 35

*Yow v. National Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1182-83 (E.D. Cal. 2008)...................... 27

## **Statutes**

Fed. R. Civ. P. 12(b)(6)................................................................................... 4, 20

## **Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 617 ........................................................... 20, 22

RESTATEMENT (SECOND) OF TORTS § 564.................................................................. 23

RESTATEMENT (SECOND) OF TORTS § 564A................................................................. 27

RESTATEMENT (SECOND) OF TORTS § 614 .................................................................. 21

## **Rules**

Local Rule 7.1(d) ............................................................................................. 2

## INTRODUCTION

In CNN's effort to avoid responsibility for assassinating the character of a child in a week-long news cycle, its opening brief avoids discussing the bulk of CNN's false and defamatory accusations and grossly mischaracterizes the few it does mention.  The stark contrast between CNN's actual reporting and its recitation of the facts in its preliminary statement provides a glaring indictment of CNN's disingenuous legal positions.   In its reporting, Nicholas Sandmann ("Nicholas") was the culprit who spearheaded a physically threatening, racist confrontation with four African American men who were merely preaching about the bible and oppression, before assaulting an elderly Native American man singing a song of peace and unity.  These false accusations actually reported by CNN do not appear in CNN's statement of the case to this Court.

For instance, the Black Hebrew Israelites are no longer described as "four African American men preaching about the bible and oppression," (*e.g.*, Compl., ¶ 148(e)), but instead they are the "extremist Black Hebrew Israelite sect" when speaking to the Court, (Mot. at 1).  Nicholas and his classmates are no longer described as being on the verge of "lynching" the oppressed Black Hebrew Israelites "because they didn't like the color of their skin" or "their religious views," (e.g., Compl., ¶ 189(e)), but instead the Israelites "hurl[ed] insults at the students" and "directed abusive remarks toward them for nearly an hour,"  (Mot. at 1).  Nicholas no longer "put himself in front of [Nathan Phillips] and wouldn't move" when Phillips "needed an out," "an escape," and a "retreat" from "a really dangerous situation" of "100-plus of these young men who were well-fed and healthy and strong and ready to do harm to somebody," (Compl. ¶ 189(g)), but instead "Phillips … approached Sandmann, who remained in place and stood facing the activist," (Mot. at 2).  Nicholas and his classmates no longer "surrounded [Phillips] and … blocked his path to the Lincoln Memorial steps," (*e.g.*, Compl., ¶ 227(d)), but instead Phillips "saw the

1

confrontation and decided to intervene," (Mot. at 1).  In fact, the words "escape," "dangerous situation," and "lynch" do not even appear in CNN's 25-page brief, because addressing them is fatal to CNN's Motion.[1]

After addressing just a few cherry-picked, out of context statements in its opening brief, CNN asks this Court to hold as a matter of law that the entirety of its accusations against this sixteen-year-old student are substantially true, statements of protected opinion, and/or incapable of a defamatory meaning.  CNN continues to distort the facts, asking this Court to hold that it is substantially true that Nicholas "harassed" and "taunted" Phillips, "got right in [Phillips'] face," and "block[ed] [Phillips'] escape" from "a really dangerous situation."  (Mot. Ex. 9).  The truth is that CNN republished its false coverage over seven days across multiple platforms precisely because the coverage consisted of inflammatory defamation – that particular kind of false speech that would be expected to generate the very hate mob behavior experienced by Nicholas in the aftermath of CNN's reporting – and because the lies it reported "neatly fit CNN's anti-Trump agenda."  (Compl. ¶ 115).  The truth is that Nicholas is "a young boy who was guilty of little more than wearing a souvenir Make America Great Again cap while on a high school field trip to the National Mall in Washington, D.C. to attend the January 18 March for Life," who fell victim to CNN's worldwide megaphone for anti-Trump rhetoric.  (*Id.* ¶ 12).  The truth is that Nicholas is a child who was verbally assaulted by adults in a known hate group, then physically confronted and picked on by adult political activists, and finally bullied by one of the most powerful and agenda-driven news organizations in the world, CNN.

CNN responds to these truths with an intentionally distorted recitation of its own reporting,

---

[1] These words appear only in CNN's 17-page, single-spaced Exhibit 9, in which it argues in cursory fashion the bases for dismissal of each alleged defamatory statement. Leave of Court was not sought or granted to file this improper exhibit that is an end-run around Local Rule 7.1(d).

isolated from all contextual clues, in an effort to disguise and mischaracterize its reckless and agenda driven lies against a teenager as responsible reporting.  The four legal theories espoused by CNN simply do not fit the well-pled allegations Nicholas makes in his Complaint.  *First,* it cannot be disputed that Nicholas was subjected to public hatred and scorn and that CNN's reporting is reasonably capable of a defamatory meaning.[2]  *Second*, each of CNN's publications emphasized Nicholas specifically, distinguishing him from the group of students generally.  *Third*, each of CNN's reports described conduct.  Statements describing conduct are inherently capable of being proven true or false and are generally considered statements of fact rather the statements of opinion.  Either Nicholas surrounded Phillips or he did not.  Either Nicholas placed himself in front of Phillips' path to the Lincoln Memorial or he did not.  Either Nicholas blocked Phillips' escape from a crowd of hundreds of physically aggressive students who were prepared to batter Phillips and the Black Hebrew Israelites, or he did not.  *Fourth*, as the Complaint alleges and as is fact, these claims are not substantially true: they are false.  Nicholas did not engage in any such improper conduct, and it turns truth on its head to suggest that it is substantially true to accuse Nicholas of "surrounding" and "getting in the face" of Phillips before "blocking his escape" from "a really dangerous situation" of a crowd of hundreds ready "to lynch" minorities, when Nicholas never moved and Phillips approached him from a distance banging a drum in his face.

CNN also repeatedly insists – though without citing it as a basis for dismissal – that it merely reported the statements of witnesses and, in the long run, reported some of the truth.  CNN is not entitled to immunity from suit merely because many of its false accusations were accurately

---

[2] Although CNN's opening brief largely parrots the brief filed by The Washington Post, CNN avoided the frivolous position taken by the Post that Kentucky follows the "innocent construction rule" – requiring dismissal of this case if the alleged defamation is capable of an innocent construction.  The words "innocent construction rule" do not appear in Kentucky jurisprudence, and the Kentucky Supreme Court and recent federal decisions have roundly rejected this position.

quoted lies from suspect sources.  While perhaps applicable to public figure cases under the right circumstances, when dealing with a private figure plaintiff, the case is governed by the "ancient rule that authors and publishers may not repeat false and defamatory matter and escape liability with the plea that they were but quoting a source deemed authentic."  *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 894 (Ky. 1981) (rejecting the doctrine of "neutral reportage" in Kentucky, which has no basis in the Constitution and which, in any case, does not apply to private figures); *Nicholson v. Rust*, 52 S.W. 933, 934 (Ky. 1899) ("Tale bearers are as bad as tale makers.").  Moreover, that CNN must point to its subsequent coverage in an effort to demonstrate that its reporting was fair and neutral belies its assertions that its earlier reporting was fair and accurate.  Truth and the facts of the event do not change. Only CNN's presentation of the facts has changed, and to the extent CNN's later coverage attempts to balance some of its lies with snippets of the truth, it serves only as an indictment of its total failure to investigate and exercise ordinary care in the first instance.

## FACTUAL BACKGROUND

CNN's lawyers masquerade the network's reporting of the January 18 incident as true and innocent coverage of high school children by avoiding any meaningful discussion of the factual allegations made against it and the context in which it published its accusations against Nicholas. The Complaint's well-pled facts and a reasonable reading of CNN's publications in context require denial of CNN's Motion to Dismiss ("Motion").[3]

### I.    Nicholas Was a Victim, Not an Aggressor, at the January 18 Incident.

On January 18, 2019, Nicholas attended the March for Life ("March") on a high school

---

[3] CNN's Motion reads more like a motion for summary judgment, citing but failing to apply the Rule 12(b)(6) standard requiring Nicholas's factual allegations to be treated as true.

field trip with his Covington Catholic High School ("CovCath") classmates. (Compl. ¶ 38).  After the March concluded, Nicholas and his classmates were instructed to wait on the stairs of the Lincoln Memorial for buses that would take them home to Kentucky. (*Id*. ¶ 39).  A short distance away, members of a religious extremist group – the Black Hebrew Israelites ("BHI") – were shouting profanities and insults to a multitude of bystanders, including Native Americans present for the Indigenous Peoples March. (*Id*. ¶¶ 41, 44).  Before long, the BHI focused their attention and heckling almost entirely on Nicholas and his classmates. (*Id*. ¶ 41).  Nicholas and his classmates continued waiting for their buses on the stairs of the Lincoln Memorial while the BHI directed abusive, homophobic, and racist remarks toward them for nearly an hour. (*Id*. ¶¶ 41, 44).  At that time, one of Nicholas's classmates asked a chaperone for, and received, permission to perform school spirit cheers to drown out the hateful speech being hurled at them. (*Id*. ¶ 42).

During a school spirit cheer, Phillips and a small group of companions who had earlier attended the Indigenous Peoples March approached Nicholas and his classmates from a distance, beating drums, singing, dancing, and carrying cameras, thus instigating a confrontation. (*Id*. ¶¶ 45-47).  Though claiming he was trying to reach the Lincoln Memorial, Phillips intentionally walked past clear pathways to the Lincoln Memorial and into the crowd of CovCath students, who merely acquiesced in his chosen course of conduct, including specifically confronting Nicholas and beating a drum within inches of Nicholas's face while Nicholas stood silently still.  (*Id*. ¶ 58).  Phillips was free to move about the CovCath students and never made any attempt to move past, around, or away from Nicholas. (*Id.* ¶¶ 49, 54). Nicholas did not swarm Phillips, never moved toward Phillips, never made any movement to block Phillips' path, never prevented Phillips from physically moving wherever he wished, never physically intimidated Phillips, and never uttered a

word to or gestured toward Phillips. (*Id.* ¶¶ 58-59, 64).[4]  The interaction ended when Nicholas was instructed to move to the buses, at which time Phillips turned away from the Lincoln Memorial and outwardly celebrated some perceived "win" over Nicholas, with his companion yelling "I got him, man … We won grandpa, we f\*\*\*ing won grandpa!" (*Id.* ¶¶ 62-63).[5]

The public record available to CNN at the time of its publications should have given CNN pause before rushing to press.  Indeed, CNN's false reporting can be traced, in part, to its reliance on an unsourced, edited one-minute video of the January 18 incident posted to social media on the evening of January 18 by a person named Kaya Taitano, focusing exclusively on Nicholas's interaction with Phillips.  (*Id.* ¶¶ 66-74, 268).  Later, a similar video focused entirely on the interaction between Nicholas and Phillips was posted to Twitter by a fake, for sale Twitter account called @2020fight; it was viewed millions of times within days.  (*Id.* ¶¶ 66-74).[6]  CNN's reporting, in any case, went well beyond what was shown in the Viral Video, which itself did not show any of the defamatory conduct CNN alleged against Nicholas.  (*Id.* ¶ 67).  On January 19, 2019, one of the BHI posted a lengthy video accurately chronicling the January 18 incident.  (*Id.* ¶ 78).  This BHI video clearly shows CNN's reporting to be false, including because Nicholas never assaulted the BHI, Phillips specifically approached Nicholas and this classmates from a distance, Nicholas never moved, and Phillips was free at all times to move about.  On January 20, 2019, Nicholas issued a public statement that accurately related to the facts of what occurred during the January

---

[4] CNN desperately clings to nine frames of an obscure cellphone video clip – obfuscated by camera shutter roll and blur – in which Nicholas is alleged to have "tomahawk chop[ped]." (Mot. at 4, Ex. 3). This seconds-long clip does not show Nicholas performing a tomahawk chop and no other video angle of the January 18 incident corroborates CNN's accusation.  In any event, whether Nicholas tomahawk chopped is a question of fact as Nicholas denies harassing, mocking or taunting Phillips.

[5] The events of January 18 will be generally referred to as the "January 18 incident."

[6] The Taitano and @2020fight videos are collectively referred to herein as the "Viral Video."

18 incident.  (*Id.* ¶¶ 84-85, Ex. C).

## II.      Nicholas Was a Victim of CNN's Negligent Reporting.

Within the body of its brief, CNN made a concerted effort not to recount or discuss the bulk of its accusations against Nicholas or its motive in recklessly reporting those accusations against a child.

Self-branded the "Facts first" network, CNN jumped at the opportunity to smear Nicholas and his classmates to further its anti-Trump agenda.  (*Id.* ¶ 12).  It engaged in a *seven-day media cycle* openly criticizing Nicholas through the publication of online articles, social media posts, and television broadcasts which directly targeted Nicholas and his face in the homes of millions across the world.  (*Id.* ¶¶ 7, 12).  During its seven-day campaign to assassinate Nicholas's character in furtherance of its own political and financial agendas, CNN published no less than four false and defamatory television broadcasts, nine false and defamatory Internet articles, and four false and defamatory tweets concerning Nicholas.  (*Id.* ¶ 138).  At all times, Nicholas was a focus of CNN's coverage of the January 18 incident.  (*E.g.*, *id.* ¶ 15).  CNN's barrage was based, in part, on its republication of the false claims of various biased third parties whose claims CNN did not care to investigate.  (*E.g.*, *id.* ¶ 260-65).

### A.      CNN's First Broadcast and Second Article Were False and Defamatory.

CNN aired its first television broadcast on January 19, which it also posted online, alternately sub-titled "NATIVE AMERICAN WAR VET:  'THIS YOUNG FELLA PUT HIMSELF IN FRONT OF ME AND WOULD NOT MOVE," "… 'I'M A VIETNAM VETERAN AND I KNOW THAT MENTALITY OF "THERE'S ENOUGH OF US, WE CAN DO THIS"'," and "HEARTBREAKING VIRAL VIDEO … appears to show teens harassing Nathan Phillips in

DC" (the "First Broadcast"). (*Id.* ¶¶ 139-40, 148; Mot. Ex. 4).[7]

CNN's Ana Cabrera led the broadcast with an opening statement, including that "a Native American elder and Vietnam War veteran speaking to CNN after a disturbing viral video shows a group of teens harassing and mocking him in the nation's capital,"[8] in direct reference to Nicholas's image as CNN showed the Viral Video. (*Id.* ¶¶ 140, 148). According to the opening monologue, Phillips and the BHI were engaged in peaceful song, prayer, and preaching: Phillips was said to have been "beating his drum and singing an American Indian protest song … when he saw a clash erupting between a group of teenaged students and four African American young men preaching about the bible and oppression," during which Phillips "immediately sensed danger." (*Id.*). The very next words were Phillips' false claim that he had "'seen the angry faces and … realized I had put myself in a really dangerous situation … here is a group of people who were angry at somebody else and I put myself in front of that and all of a sudden I am the one who all that anger and all that wanting to have the freedom to just rip me apart … that was scary. I'm a Vietnam times veteran and I know that mentality of "there's enough of us, we can do this."'" (*Id.*) In short, from the start, CNN's coverage was loaded with language communicating a threatening, physical confrontation initiated by Nicholas against two peaceful minority groups.

Immediately following this claim from Phillips, Cabrera references Nicholas, specifically, when she states that "a young man got right in his face, watch." (*Id.*). Immediately after, while showing a close-up of Nicholas's face, Phillips made direct claims of misconduct against Nicholas:

(1)  "'When I started going forward and that massive group of people start …

---

[7] CNN also republished the First Broadcast online, referred to as the "Second Article" in the Complaint, with the sub-title "Native American man confronted by teens speaks out." (*Id.* ¶ 166, Ex. H). The First Broadcast was also republished online in at least four additional locations. (*Id.* ¶ 174).

[8] In this section, certain statements referred to were not alleged to be false and defamatory but are included herein because they provide the context in which the defamatory statements were uttered.

moving aside to allow me to move out of the way, or to proceed, this young feller put himself in front of me and wouldn't move.  And, so I couldn't – if I took another step, I would be putting my person into his presence, into his space, and I would have touched him, and that would have been the thing that the group of people would have needed to spring on me.'"  (*Id.*).

(2)    CNN followed this quote with a question:  "what bothered him the most about Friday's confrontation?"  (*Id.*).  Phillips answered, in part, "Fear … for the next generations … for where this country is going … for those youths … for their futures … for their souls … their spirits … what they're gonna do to this country. What they were doing wasn't making America great, it was just tearing down the fabric, the whole idea, the spirit of America…'"  (*Id.*).

(3)    This was followed up with a screenshot of Congresswoman Haaland's tweet, stating "[t]his Veteran put his life on the line for our country.  The students' display of blatant hate, disrespect, and intolerance is a signal of how common decency has decayed under this administration."  (*Id.*).

The broadcast, available online, closed with a statement from the Diocese of Covington "condemning" Nicholas and his classmates' actions.  (*Id.*).

From the start, CNN repeatedly distinguished Nicholas from the larger group of students both through imagery and descriptive circumstances.  In context, the First Broadcast left no doubt as to who was the aggressor and villain – the white boy wearing a MAGA cap – and who was the innocent victim of racist conduct.  The broadcast conveyed as a matter of fact the false and defamatory gists that Nicholas instigated a racist confrontation with an elderly Native American man praying for indigenous rights during which he harassed, mocked, and assaulted Phillips, violating the fundamental standards of his religious community and school.  (*Id.* ¶¶ 143-47).

**B.    CNN's Second Broadcast and First Tweet Were False and Defamatory.**

CNN's second broadcast, also aired January 19, was captioned "SHAMEFUL ACT – VIRAL VIDEO CAPTURES TEENS MOCKING NATIVE AMERICANS" (the "Second

Broadcast").  (*Id.* ¶¶ 149-50; Mot. Ex. 5).[9]   The Second Broadcast was also centered around Nicholas and the Viral Video.  (Compl. ¶¶ 150, 151).  Unlike the First Broadcast, however, CNN expressly took on the position that Nicholas also instigated a racist confrontation with and assaulted the BHI.

S.E. Cupp led the broadcast with an opening monologue – while the Viral Video alternated with a video of Phillips crying – stating, in part, "[y]ou've probably seen … the viral video sweeping the Internet of a mob of MAGA hat wearing high school students surrounding a Native American chanting and drumming in the nation's capital at the Indigenous Peoples March."  (*Id.* ¶¶ 150, 157).  Those students, Ms. Cupp said while showing Nicholas's face, "harassed and taunted" Phillips "and others," "angrily chant[ed] 'build the wall,' " "originally started shouting at a group of African-Americans," and "circle[d] Nathan Phillips" during the interaction.  (*Id.*).  Phillips was referred to as a "Native Elder," "a member of the Omaha Nation," and "a Vietnam vet."  (*Id.*).  After repeating the comments of Haaland and the Diocese from the First Broadcast, the Second Broadcast refers to a tweet by CNN's Kirsten Powers, stating, in part, "[t]his is absolutely contrary to Catholic teaching and you know it."

That set the stage for S.E. Cupp's tale maker, Chase Iron Eyes, introduced as an attorney for the Lakota Law Project.  Chase Iron Eyes stated, among other things, that "this qualified as a legal definition of assault.  They were causing an apprehension, an objective fear of offensive contact or harm. … They were disrupting … it's emblematic of where we're at in terms of race relations in our country," and likened the event to instances such as Wounded Knee.  (*Id.*).  Ms.

---

[9] The Second Broadcast was also republished by CNN in its First Tweet on the S.E. Cupp Unfiltered official page, stating "[t]eens in MAGA gear mock a Native American Vietnam vet, and @secupp wishes she could tell them there's no place for this in our society…"  (*Id.* ¶ 237, Ex. P.).

Cupp answered by stating, in part, "I know you've seen a lot of racism in your day and generations past, but were you surprised to see it coming from such a young generation?" (*Id.*).

In context, the Second Broadcast conveyed the false and defamatory gists that Nicholas instigated a racist confrontation with Phillips and the BHI, that he assaulted Phillips, that he engaged in racist taunts, and that he violated the fundamental standards of his school and religious community. (*Id.* ¶¶ 152-56).

### C. CNN's First Online Article and Second Tweet Were False and Defamatory.

On January 19, CNN published online its first article entitled "Teens in Make America Great Again hats taunted a Native American elder at the Lincoln Memorial." (*Id.* ¶ 158, Ex. G).[10] The First Article referenced the Viral Video and specifically referred to Nicholas by description. (*Id.* ¶ 159).[11] Though Nicholas does not have the space to restate each piece of the article creating it is context, highlights are provided below.

The First Article begins with the statement that a "crowd of teenagers surrounded a Native American elder and other activists and mocked them after Friday's Indigenous Peoples March" and quickly set the stage for the defamatory gists alleged in the Complaint with the statement from Taitano that she "did not feel safe in that circle." (*Id.* ¶ 165, Ex. G). After expressly accusing Nicholas and his classmates of instigating a confrontation with the BHI – "the whole incident started when the teens and four young African Americans, who'd been preaching about the bible nearby, started yelling and calling each other names" (*id.*) – CNN expressly laid blame for the incident on Nicholas: "things were starting to calm down until [Phillips] got to the grinning boy

---

[10] CNN also tweeted its First Article in its Second Tweet (*id.* ¶ 239, Ex. Q), with the caption "Video shows a crowd of teenagers wearing [MAGA] hats taunting a Native American elder …"
[11] Plaintiff was forced to resort to archived data to recover the First Article, but it does contain social media links appearing to contain the Viral Video emphasizing Nicholas's individual involvement.

seen in the video," who Taitano said "just refused to move and he just got in Nathan's face" while "[o]ther boys circled around" and "were mocking him." (*Id.*). Phillips then added to the clear context created by the First Article – a physically threatening confrontation that was overtly racist – by stating that he "was scared" and "it was hate unbridled," before singling out Nicholas as "blocking [his] escape" when he "wanted to leave" the unsafe situation but sixteen-year-old Nicholas would not permit his safe retreat. (*Id.*). It was in this context that CNN closed its First Article with the Diocese statement of condemnation and potential expulsion. (*Id.*).

These statements, individually in context and together in combination, conveyed the defamatory gists that Nicholas instigated this confrontation, engaged in racist taunts, assaulted Phillips, and violated the fundamental standards of his religious community. (*Id.* ¶¶ 160-64).

### D.   CNN's Third Broadcast Was False and Defamatory.

On January 20, CNN published its third television broadcast sub-titled "MAGA HAT TEENS TAUNT NATIVE AMERICAN AT INDIGENOUS PEOPLES MARCH" (the "Third Broadcast"). (*Id.* ¶ 175; Mot. Ex. 6). The Third Broadcast specifically emphasized Nicholas's involvement, showing the Viral Video at the beginning while stating "here's the video that started the outrage on social media." (Compl. ¶ 176; Mot. Ex. 6).

The Third Broadcast closely tracks the First Broadcast, stating Phillips was "singing an American Indian protest song" "when he saw a clash erupting between a group of teenage students and he says four African American young men preaching about the bible and oppression." (*Id.*). Making its context clear, the broadcast leads into Phillips' false tales by stating, "Phillips says he immediately sensed danger." (*Id.*). Phillips then gave the same quote from the First Broadcast that, among other things, he was "in a really dangerous situation" and Nicholas and his classmates "want[ed] to have the freedom to just rip [him] apart," which "was scary" because he knows "that

12

mentality of 'there's enough of us, we can do this.'"  (*Id.*).

CNN then, again, expressly singles out Nicholas for blame, stating that "the young man got right in [Phillips'] face," and Nicholas "put himself in front of" Phillips, who was worried that Nicholas and his classmates would "spring on" him.  (*Id.*).  Again providing Phillips an opportunity to answer the question "what bothered him most," CNN re-aired Phillips' response that he fears what Nicholas and his classmates are doing to this country, its fabric, and its spirit, before closing with the Haaland tweet and the Diocese's statement of condemnation.  (*Id.*).

As with each other above publication, the Third Broadcast described specific conduct aimed directly at Nicholas, which in context conveyed the false and defamatory gists that Nicholas instigated a racist confrontation with Phillips, assaulted Phillips, harassed Phillips, and violated the fundamental standards of his religious community.  (*Id.* ¶¶ 176-80).

### E.    CNN's Third Article and Fourth Tweet Were False and Defamatory.

On January 21, CNN continued its days' long onslaught when it published its third online article, entitled "Native American elder Nathan Phillips, in his own words" (the "Third Article"). (*Id.* ¶ 182, Ex. I).[12]  The Third Article republished a transcript of the Phillips interview aired by CNN in its television broadcasts, republished portions of the First Broadcast, and made incredible claims regarding Nicholas's conduct toward both the BHI and Phillips, specifically emphasizing Nicholas's involvement through imagery and his alleged conduct.  (*Id.* ¶¶ 172, 183, Ex. I).

Beginning the Third Article with Phillips' description of "hatred coming from" the CovCath students, CNN republished the following key claims by Phillips that provided both the context of the article and the specific false and defamatory accusations:

(1)    "There was a disturbance" when "there were some folks there [BHI] expressing their First Amendment rights there, freedom of speech," and "this young

---

[12] CNN also published its Third Article via its Fourth Tweet (*id.* ¶ 242, Ex. S).

group of students … were offended by their speech, and it escalated into an ugly situation" that Phillips "found [him]self in the middle of…" to try to stop "a moment where something that's really ugly in our society … that's just come to a boiling point."

(2)     "Oh, what I was witnessing was just hate?  Racism?  Well, hate. … these other folks [BHI] were saying their piece, and these others [students] they got offended with" the BHI's speech that "was educational, and it was truth, and it was history about religious views and ideologies."

(3)     Nicholas and his classmates "looked like [they] were going to attack these guys.  They were going to hurt them.  They were going to hurt them because they didn't like the color of their skin.  They didn't like their religious views. … American youth who are ready to … lynch these guys.  To be honest, they looked like they were going to lynch them.  They were in this mob mentality."

(4)     The chaperones should never have allowed "such hate and racism."

(5)     "I seen the angry faces and all of that, I realized I had put myself in a really dangerous situation … I'm the one whose all that anger and all that wanting to have the freedom to just rip me apart [was focused on], that was scary.  And I'm a Vietnam veteran and I know that mentality of 'There's enough of us.  We can do this.'"

(6)     "I didn't want [my companions] to get hurt because there was 100-plus of these young men who were well-fed and healthy and strong and ready to do harm to somebody… I needed an out.  I needed an escape.  I needed to get away.  I needed to retreat somehow … when I started going forward … [Nicholas] put himself in front of me and wouldn't move.  If I took another step … that would've been the thing that the group of people would've needed to spring on me."

(7)     CNN's reporter Sara Sidner repeatedly asked Phillips if he was in fear, to which he eventually responded, "I felt like I denied them their prey.  I felt like I denied them their prey and so they were going to take it out on me."

(8)     "They were there looking for trouble, looking for something… [W]hat I'm saying is that they were very aggressive and they were very ready to go hurt somebody.  They just needed a reason." (*Id.*).

CNN made a concerted effort to lend credibility to Phillips' claims of hate crimes while discounting Nicholas's, stating, for example, "what really happened" after Phillips rejected the students' position that they were merely engaged in school cheers.  (*Id.*)

The Third Article conveyed the defamatory gists, through these statements individually in

14

context and together in combination, that Nicholas instigated racist confrontations with the BHI and Phillips, engaged in racist taunts, assaulted Phillips and the BHI, and violated the fundamental standards of his school and religious community.  (*Id.* ¶¶ 185-88).

**F.    CNN's Fourth Broadcast and Seventh Article Were False and Defamatory.**

On January 21, CNN aired its fourth false and defamatory television broadcast, entitled "STUDENT AT CENTER OF CONTROVERSIAL VIRAL FACE-OFF SPEAKS OUT" (the "Fourth Broadcast"), which it republished on at least five separate occasions online.  (*Id.* ¶¶ 190-91; Mot. Ex. 7).[13]  The Fourth Broadcast emphasized Nicholas's involvement through publishing the Viral Video and through republishing and discussing Nicholas's own interview in his defense. (*Id.* ¶ 192).

While publishing under the guise of providing additional context to what occurred at the January 18 incident by including clips of Nicholas's NBC interview, CNN overtly accused Nicholas of lying about what occurred, endorsing Phillips' false claims.  In particular, CNN stated that Phillips said Nicholas "didn't apologize and … there are intentional falsehoods in his testimony."  (*Id.* ¶¶ 191, 194).  The Fourth Broadcast conveyed that Nicholas is a liar.  (*Id.* ¶ 193). The only basis offered by CNN for dismissal of this statement is substantial truth.  (Mot. Ex. 9(40)).

**G.    CNN's Fourth Article Was False and Defamatory.**

CNN published its fourth false and defamatory online article on January 21, headlined "A new video shows a different side of the encounter between a Native American elder and teens in MAGA hats" (the "Fourth Article").  (*Id.* ¶ 195, Ex. J).  The Fourth Article emphasized Nicholas's involvement through the Viral Video and descriptive circumstances.  (*Id.* ¶ 196).

---

[13] The Fourth Broadcast was also republished online, referred to in the Complaint as the Seventh Article (*id.* ¶ 217, Ex. M), under the sub-title "Viral video sparks outrage."

CNN would have this Court rule that the Fourth Article is a balanced, neutral report under Kentucky law.  No such privilege exists, and CNN's attempt to back-pedal by telling a kernel of truth did little to change the defamatory gists of its coverage.  Instead, despite possessing contrary information, CNN continued to republish Phillips' false narrative, while specifically discounting Nicholas's truthful statement as containing "intentional falsehoods."  (*Id.* ¶ 201).  The Fourth Article reiterated, among other things, that "white high school students in [MAGA] hats and shirts mock[ed] a Native American elder," that Nicholas "blocked [Phillips'] escape," that "the situation starting to grow calm until Sandmann got in Phillips' face," that Nicholas "blocked [Phillips'] path as he tried to keep moving," and that, as a result, Phillips "was scared."  (*Id.*).

These repetitive, false descriptions of Nicholas's conduct conveyed the defamatory gists that Nicholas instigated a racist confrontation with Phillips, engaged in racist taunts, assaulted Phillips, and subsequently lied about it.  (*Id.* ¶¶ 197-200).

### H.  CNN's Fifth Article Was False and Defamatory.

On January 23, CNN published is fifth false and defamatory online article headlined "America mocks and dehumanizes natives at every turn" (the "Fifth Article").  (*Id.* ¶ 202, Ex. K). The Fifth Article featured the Viral Video emphasizing Nicholas and continued to falsely accuse Nicholas of specific conduct.  (*Id.* ¶ 203).

In addition to republishing parts of the First Broadcast – with all of its attendant statements directly aimed at Nicholas – the Fifth Article begins with the following emphasizing CNN's long-running theme of Nicholas being the face of the CovCath students and, in fact, leading them: "Whatever else may have been said about it or our country's reactions to it, the racist disrespect of Nathan Phillips, a Native American elder, by Nick Sandmann and his MAGA-hat clad classmates of Covington Catholic High School … is nothing new."  (*Id.* ¶ 207, Ex. K).  After recounting how

16

Nicholas's behavior was "just business as usual in America" and that "the very form of anti-native ridicule and disrespect of personhood and culture caught on multiple videos that day" predate President Trump's election, the Fifth Article specifically called out Nicholas as engaging in racist conduct: "Sandmann intentionally mocked a native elder for entertainment of his friends, got caught, and still won't apologize." (*Id.*). The article is embedded with various context clues, as well, such as "racism against and disrespect of natives is embedded in the American psyche early in life," "America mocks and dehumanizes natives at every turn," and "MAGA isn't merely about immigration, it's about skin pigmentation." (*Id.*).

The Fifth Article itself and by republication of the First Broadcast conveyed the false and defamatory gists that Nicholas instigated a racist confrontation during which he harassed, mocked, and assaulted Phillips. (*Id.* ¶¶ 204-06).

## I.   The Sixth Article and Third Tweet Were False and Defamatory.

On January 23, CNN published its sixth online article entitled "Teen in confrontation with Native American Elder says he was trying to defuse the situation" (the "Sixth Article"), which contains an "Editor's Note" providing that the "article and headline have been updated several times since its first publication . . . ." (*Id.* ¶ 208, Ex. L).[14] The Sixth Article included the Viral Video and otherwise emphasized Nicholas and his involvement. (*Id.* ¶ 209, Ex. L).

Again, despite CNN's knowledge of true facts that should have prompted CNN to admit its errors to mitigate the harm it had caused to Nicholas's reputation over a span of five days, CNN simply back-pedaled a bit by including some snippets of truth alongside the same old lies. It again republished, among other things, that Phillips "was scared for his safety and the safety of those

---

[14] CNN also published its Sixth Article via its Third Tweet (*id.* ¶ 240, Ex. R) with the caption "Video shows a crowd of teenagers wearing [MAGA] hats taunting a Native American elder …"

with him," that the incident started when Nicholas and his classmates began verbally sparring with "four young African-Americans, who'd been preaching about the Bible nearby," that "things were starting to calm down until [Phillips] got to the grinning boy seen in the video," that Nicholas "refused to move and he just got in Nathan's face" while "other boys circled around," and that Phillips "was scared" while Nicholas "was blocking [his escape]." (*Id.* ¶ 216, Ex. L). The Sixth Article also republished the Fourth Broadcast, calling Nicholas a liar and supporting Phillips' false tales. (*Id.* ¶ 215).

This article conveyed the same defamatory gists: Nicholas was, again, to blame for having instigated a racist confrontation with Phillips, engaged in racist taunts, assaulted Phillips, violated the fundamental standards of his school and religious community, and subsequently lied about it. (*Id.* ¶¶ 210-15).

**J.     CNN's Eighth Article Was False and Defamatory.**

On January 24, CNN published its eighth false and defamatory online article headlined "Native American elder from viral staredown [sic] says teen's response is coached, insincere" (the "Eighth Article"). (*Id.* ¶ 221, Ex. N). The Eighth Article republished parts of the First and Fourth Broadcasts. (*Id.* ¶ 227). It emphasized Nicholas's involvement through the Viral Video and descriptive circumstances. (*Id.* ¶ 222).

In addition to the statements from the First Broadcast, such as Phillips was in "a really dangerous situation" when Nicholas wanted "the freedom to just rip [him] apart," and calling Nicholas a liar in the Fourth Broadcast, the Eighth Article included statements such as "the students surrounded [Phillips], and Sandmann blocked his path to the Lincoln Memorial steps," and "Phillips said he tried" to walk away but "was blocked." (*Id.* ¶¶ 172, 227). The Eighth Article conveyed the false and defamatory gists that Nicholas instigated a racist confrontation with

Phillips, engaged in racist taunts, assaulted Phillips, and is a liar.  (*Id.* ¶¶ 223-26).

### K.   CNN's Ninth Article Was False and Defamatory.

CNN published its ninth online article on January 25 headlined "Kentucky Catholic diocese apologizes for condemning students in viral video with Native American elder" (the "Ninth Article").  (*Id.* ¶ 228, Ex. O).  This article emphasized Nicholas's involvement through the Viral Video and descriptive circumstances.  (*Id.* ¶ 229).  It also republished portions of the First and Fourth Broadcasts, including the statements that Nicholas lied about the January 18 incident and Phillips' statements that he "was in a really dangerous situation" with Nicholas and his classmates wanting "to rip [him] apart."  (*Id.* ¶¶ 172, 235).  While purporting to be about the Diocese recognizing its own error, CNN refused to recognize its own:  the Ninth Article further discounted Nicholas's truthful statements, saying that "Phillips, on the other hand, told CNN this week he felt hatred … he was trying to retreat and the only way he could do so was to go forward … [but] this young fellow put himself in front of me and wouldn't move."  (*Id.* ¶ 235, Ex. O).

### III.   <u>Investigations by the Diocese and an Independent Investigator Establish Falsity.</u>

In a practical demonstration that CNN's accusations are, indeed, provably false rather than subjective opinion, the Diocese of Covington ("Diocese") retained a third-party investigative firm who spent 240-man hours investigating the January 18 incident.  (*Id.* ¶ 93).  That investigation found that Nicholas's January 20 statement accurately set forth the events of the January 18 incident and, in the Diocese's words, the findings "exonerated our students." (*Id.* ¶ 91, 94).

### <u>ARGUMENT</u>

Kentucky's Constitution recognizes a "fundamental right of private individuals to be free from being defamed," mandating that "'[e]very person may freely speak, write and print on any subject, *being responsible for the abuse of that liberty*.'"  *McCall,* 623 S.W.2d at 886 (quoting Ky.

Const. § 8) (emphasis added).  The Supreme Court of Kentucky has recognized that "some categories of speech are undeserving of any constitutional protection at all, including false, defamatory speech."  *Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 312 (Ky. 2010).

I.   **Legal Standards to Be Applied.**

A.   **All Allegations of the Complaint Must be Taken as True.**

CNN erroneously ignores the breadth and detail of Nicholas's factual allegations, and Rule 12(b)(6) requires only facial plausibility.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility exists when the factual allegations allow a court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  The plausibility standard applies to each of the elements of defamation individually.  *See, e.g., Araya v. Deep Dive Media, LLC*, 966 F. Supp. 2d 582, 596-97 (W.D.N.C. 2013) (rejecting group libel defense and holding that plaintiff's identity was "plausibly 'ascertainable'" where she was not named or described in the article but a photograph in the article of over one hundred individuals highlighted her in particular).

B.   **"Of and Concerning" Is a Jury Issue if There Is Any Ambiguity.**

Nicholas was literally and figuratively the face of CNN's reporting.  In each of CNN's publications, he was singled out through the Viral Video and descriptive circumstances that distinguished him from the balance of the student group.  The "of and concerning" inquiry is only a question of law when "there is no ambiguity in the language used in connection with all the attendant circumstances." *Marr v. Putnam*, 196 Or. 1, 15 (1952).  If, after examining the libelous publication as a whole and in context, there exists any ambiguity as to whether the libel is "of and concerning" the plaintiff, the question must go to the jury.  *See, e.g.*, RESTATEMENT (SECOND) OF TORTS ("Restatement") § 617 cmt. a ("[W]hether [publication] was of and concerning the plaintiff [is] ordinarily for the jury or trier of fact to determine."); *O'Brien v. Williamson Daily News*, 735

F. Supp. 218, 223-24 (E.D. Ky. 1990), *aff'd*, 931 F.2d 893 (6th Cir. 1991) (analyzing the "article as a whole" and finding that the "ultimate conclusion on the reasonableness of the allegedly libelous interpretation must lie with the finder of fact").

### C.   Defamatory Meaning Is a Jury Issue if There Is Any Ambiguity.

CNN incorrectly argues that its publications did not convey a defamatory meaning (Mot. at 16) and in doing so fails to highlight a critical distinction between the role of judge and jury in defamation cases.  The judge must decide merely whether the challenged statements, in the context of the whole article, were *capable* of bearing a defamatory meaning.  *See, e.g.*, RESTATEMENT § 614; *Desai v. Charter Commc'ns, LLC*, 2018 WL 297599 at *4 (W.D. Ky. January 4, 2018) (emphasis added).  Once a statement is determined to be capable of bearing a defamatory meaning as a matter of law, the inquiry ends and it is for the jury to determine "whether a defamatory meaning was attributed to it by those who received the communication." *Desai*, 2018 WL 297599 at *4 (citing *Yancey v. Hamilton*, 786 S.W.2d 854, 858-59 (Ky. 1989)).   If the challenged statements are capable of more than one meaning, one defamatory and the other non-defamatory, "the jury should decide which of the meanings a recipient of the message would attribute to it." *Yancey*, 786 S.W.2d at 858 (citations omitted).

### D.   Truth or Falsity Is a Jury Issue Except in the Clearest Cases.

Finally, and perhaps most egregiously, CNN urges this Court to dismiss the Complaint because it contends that certain of its accusations are "substantially true."   The doctrine of substantial truth applies "in very narrow and limited circumstances and relates only to incidental information and not to essential content."  *Ky. Kingdom Amusement Co. v. Belo Ky., Inc.*, 179 S.W.3d 785, 791 (Ky. 2005).  The question of substantial truth is a highly factual inquiry generally reserved for the jury and is not an issue to be resolved on a motion to dismiss where Nicholas's

allegations of falsity must be accepted as true. *See, e.g.,* RESTATEMENT § 617 cmt. a ("[T]he question of whether the defamatory imputations are true is ordinarily for the jury."); *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 796 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014) (a defendant is entitled to judgment only "if the evidence supports, without contradiction or room for reasonable difference of opinion, the defense that these statements were substantially true"); *Clark v. Viacom Intern. Inc.*, 617 Fed. App'x 495, 510 (6th Cir. 2015) (same); *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 283 (Ky. 2014) ("Ordinarily, because the law does not presume an individual's misconduct, the falsity of defamatory statements is presumed."). Setting aside CNN's ostensible admissions of falsity in its own preliminary statement, Nicholas has exhaustively alleged that the gist and discrete factual meanings perpetuated by CNN's coverage are false, and the question of substantial truth therefore cannot be resolved on a 12(b)(6) motion. *Cf. Marcum v. G.L.A. Collection Co. Inc.*, 646 F. Supp. 2d 870, 873 (E.D. Ky 2008) (holding it would be premature to dismiss case where there was an ongoing dispute about whether the statement was, in fact, true).

## II.      CNN's Publications Are "Of and Concerning" Nicholas.

CNN asserts that the group libel doctrine bars Nicholas's claims, but this argument fails because Nicholas was the face of CNN's reporting and the larger context of the January 18 incident.[15]  Each of CNN's broadcasts, articles, and tweets singled out Nicholas from the rest of his classmates and emphasized his individual involvement by showing the Viral Video, as well as by specifically describing Nicholas's alleged misconduct, and often describing defamatory

---

[15] *See, e.g.,* Compl. ¶ 207(c): "the racist disrespect of Nathan Phillips, a Native American elder, by Nick Sandmann and his MAGA-hat clad classmates of Covington Catholic High School at the Lincoln Memorial is nothing new."

conduct of the students while simultaneously showing Nicholas's face.[16]  Thus, any viewer of

CNN's coverage immediately saw Nicholas's image as the face of the January 18 incident.  Indeed,

Nicholas was the *only* student in the CovCath group singled out by CNN, and *none* of its

accusations exclude Nicholas from the purported conduct of the students generally.  Thus, CNN

cannot now assert that it is unreasonable to conclude that its accusations apply to Nicholas

specifically.

Whether or not the Court views the "of and concerning" inquiry through the lens of group

libel, the same question remains: could a jury reasonably conclude "the defamatory words refer to

some ascertained or ascertainable person?"  *Louisville Times v. Strivers*, 68 S.W.2d 411, 412 (Ky.

1934).[17]  "A defamatory communication is made concerning the person to whom its recipient

correctly, or mistakenly but reasonably, understands that it was intended to refer."  RESTATEMENT

§ 564.  "[T]he plaintiff need not be specifically identified in the defamatory matter itself so long

as it was so reasonably understood by plaintiff's 'friends and acquaintances … familiar with the

incident.'"  *Stringer,* 151 S.W.3d 781, 796.  Though unnecessary in this case, the Court may look

outside the four corners of CNN's publications to answer whether they are about Nicholas, which

"does not affect whether the defamatory statement is per se or per quod."  *E.W. Scripps Co. v.*

*Cholmondelay*, 469 S.W.2d 700, 702 (Ky. Ct. App. 1978).

A.      **Nicholas Does Not Rely on His Status as a Member of the CovCath Group to Confer Standing and the Group Libel Doctrine is Therefore Inapplicable.**

---

[16] CNN concedes that the following statements were "of and concerning" Nicholas because they specifically referenced him: Mot. Ex. 9 (3, 7, 8, 22, 24, 33, 40, 42, 44, 47, 48, 49, 51).

[17] Ultimately, the result is the same whether the Court addresses "of and concerning" through the lens of the group libel doctrine or not.  *See Church of Scientology v. Flynn*, 744 F.2d 694, 697 n.5 (9th Cir. 1984) (rejecting group libel doctrine but holding plaintiff's "claim would also fall within a well-established exception to the group libel rule that allows a group member to sue upon a showing that 'the circumstances of a publication reasonably give rise to the conclusion that there is particular reference to the member'").

The group libel defense is inapplicable for the simple reason that Nicholas does not assert that his membership in the CovCath group independently establishes that CNN's accusations are "of and concerning" him, specifically. The group libel doctrine bars a claim only where a plaintiff is not otherwise identified and resorts to relying on his membership in a group to independently establish standing. *See, e.g., O'Brien*, 735 F. Supp. at 222 ("Where a publication affects a class of persons *without any special personal application* … an individual member *not specifically imputed or designated* cannot maintain an action.") (emphasis added). Here, Nicholas was singled out from the CovCath group and was specifically designated in CNN's reporting by use of his name, the Viral Video, and descriptive circumstances. Since CNN's false and defamatory accusations have special personal application to Nicholas, the group libel doctrine is not an applicable defense.[18]

### B. Nicholas Was Identified by Name, Photograph, and Descriptive Circumstances.

Moreover, courts routinely find publications to be "of and concerning" the plaintiff where the defendant utilizes the plaintiff's likeness in connection with the article or broadcast, even where the offending publication refers only to an indiscriminate class. Indeed, even if CNN had not singled out Nicholas within the text and narration of its broadcasts and articles – it did – the use of and reference to the Viral Video prominently featuring Nicholas ends this inquiry. *See, e.g., Stanton v. Metro Corp.* ("*Stanton II*"), 438 F.3d 119, 128 (1st Cir. 2006) (entire article may be of and concerning by use of plaintiff's photograph "*even in the absence of any express textual*

---

[18] *See, e.g., Stanton v. Metro Corp.* ("*Stanton I*"), 357 F. Supp. 2d 369, 375-76 (D. Mass. 2005), *rev'd on other grounds*, 438 F.3d 119 (1st Cir. 2006) (holding that plaintiff was not "contending that her reputation was maligned by defamatory statements made about suburban teenagers in general," but instead that they harm her individually due to the use "of her picture in connection with the article"); *Marr*, 196 Or. at 19 ("[W]hen … defamatory matter points to a particular member of the group or class involved …, the person so singled out is entitled to redress, … [regardless] that the language used may also apply to others"). Thus, it is no defense to Nicholas's individual claims that CNN defamed *too many* teenagers.

24

*connection between the statement and the [plaintiff's] photograph*") (emphasis added).   The juxtaposition of the plaintiff's photograph with a defamatory article has long been held to create an issue of fact for determining the "of and concerning" requirement. *Peck v. Tribune Co.*, 214 U.S. 185, 188-89 (1909) ("[o]f course, the insertion of the plaintiff's picture in the place and with the concomitants that we have described imported that she was the nurse and made the statements set forth," despite plaintiff's photograph being captioned with another's name).[19]

In *Stanton I,* an article headlined "The Mating Habits of the Suburban High School Teenager," indiscriminately referred only to high school students and teenagers "in the Boston area." 357 F. Supp. 2d at 372.  Despite the plaintiff "not [being] named anywhere in the article" and the presence of seven photographs depicting sixteen students, the group libel defense was rejected because the plaintiff "is the central female figure in the most prominent illustration, not an unidentified member of a large an undifferentiated group," and "[b]ased on that juxtaposition alone, a reasonable reader could conclude that the teenage girl depicted in the photograph" was the target of the accusations. *Id.* at 380-81. Ultimately, however, the district court erroneously concluded that a disclaimer on the first page of the article explicitly stating that the "individuals pictured are unrelated to the people or events described in this story" negated the otherwise existing impression that the article was about the plaintiff.  *Id.*  On this point, the First Circuit reversed the district court, holding that "the presence of the disclaimer does not permit the conclusion, as a matter of law, that the article is not of and concerning Stanton." *Stanton II*, 438 F.3d at 129.  Thus, despite the fact that plaintiff was not specifically named in the article, the article referred indiscriminately to students "in the Boston area," the presence of seven photographs that depicted

---

[19] *See also Nappier v. Jefferson Standard Life Ins. Co.*, 322 F.2d 502, 504 (4th Cir. 1963) ("These aims could not be fully achieved if only disclosure of one's proper name was forbidden."); *Wallace v. Media News Group, Inc.*, 568 Fed. App'x 121, 124 (3d Cir. 2014) (same).

at least sixteen people, the presence a conspicuous disclaimer on the front page indicating the individuals in the photographs were entirely unrelated to the article, and that "the article draws no literal connection between the subjects of the photograph and the subjects of its story," the First Circuit nevertheless held that "a reasonable reader could believe that Stanton … is in fact one of the teens whose promiscuous behavior is described in its text." *Id.* at 128, 130.

CNN ignored an entire body of case law holding – even in the absence of any textual reference to the plaintiff – a publication *in its entirety* is "of and concerning" the plaintiff if the speaker uses a photograph depicting the plaintiff. *See, e.g., Cheney v. Dailey News L.P.*, 654 Fed. App'x 578, 581 (3d Cir. 2016) (article stating a sex scandal "implicates dozens of city employees, including … firefighters" held reasonably capable of concerning plaintiff firefighter whose photo accompanied article); *Clark v. American Broadcasting Companies, Inc.*, 684 F.2d 1208, 1213 (6th Cir. 1982) (reversing trial court's grant of judgment to defendant based upon use of plaintiff's image in connection with broadcast regarding street prostitution, especially in light of commentary while photograph on screen); *Holmes v. Curtis Pub. Co.*, 3030 F. Supp. 522, 523, 527 (D.S.C. 1969) (jury issue for "of and concerning" where article included plaintiff's photograph at table with four others even though the article "does not identify or otherwise refer to plaintiff" except by his picture); *Jackson v. Consumer Publ'ns*, 11 N.Y.S.2d 462, 464 (App. Div. 1939) (jury issue where article only identified plaintiff by his picture and referred generally to dishonest auctioneers).

CNN also singled out Nicholas by description, and a contextual reading of CNN's coverage also militates towards holding that a reasonable jury would find CNN's accusations against the students generally to concern Nicholas specifically. CNN relies on *O'Brien v. Williamson Daily News* for its group libel defense, but this case supports Nicholas as CNN's citation is erroneous as

it pertained to one particular plaintiff: Mr. Hunt. *O'Brien* found that the reference to one particular teacher within a large group of teachers (Mr. Hunt), coupled with a contextual reading that "arguably leaves the impression that the fight and the sexual misconduct were somehow related," *defeated the defendant's motion as to that plaintiff.* 735 F. Supp. 218, 223-24. For its group libel defense, CNN also cites this Court's decision in *Loftus v. Nazari*, 21 F. Supp. 3d 849 (E.D. Ky. 2014). However, the facts of *Loftus* are not similar to and do not control this case. In *Loftus*, a contextual reading made clear the defendant had asserted that unspecified *other doctors* were covering up for *her doctor* (plaintiff) in refusing to hold her responsible, which, unlike here, described separate occurrences. In this case, on the other hand, and putting aside the use of Nicholas's image at and around the time the conduct is being discussed, it is irreconcilable to admit that the accusation that Nicholas blocked Phillips' path and retreat apply to him, specifically, and yet take the position that CNN's audience could not readily conclude that Nicholas, as the person so described, did not also surround, harass, mock, and physically intimidate Phillips. *Cf.* RESTATEMENT § 564A cmt. d ("Even when the group or class defamed is a large one, there may be circumstances that are known to the readers … which give the words … personal application to the individual that he may be defamed as effectively as if he alone were named."); *Yow v. National Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1182-83, 1190 (E.D. Cal. 2008) (accusations against group capable of applying to plaintiff even where only mention of her name was non-defamatory and article left open possibility that defamatory occurrence took place on another occasion when plaintiff not present).

Since Nicholas was identified by name, photograph, or other descriptive circumstances, and CNN admitted that many of its accusations are of and concerning Nicholas and failed to address the juxtaposition and reference to the Viral Videos and an entire body of case law on point,

27

the Court should deny CNN's Motion as to of and concerning.

### III.    CNN's Publications Are Capable of a Defamatory Interpretation.

CNN takes great pains in its Motion to avoid discussing its accusations within the context

in which they were published because doing so would be fatal to its defamatory meaning defense.

In fact, the word "context" – the cardinal rule of defamatory construction – does not appear within

the body of CNN's argument on this point and CNN references only three particular statements,

avoiding any particularized discussion of the remaining fifty statements. (Mot. at 16-18). [20]

The law, however, requires an analysis of the context in which CNN's accusations were

published to ascertain defamatory meaning. *See, e.g., Biber v. Duplicator Sales & Service, Inc.*,

155 S.W.3d 732, 738 (Ky. Ct. App. 2004) ("Alleged defamatory statements must be construed in

the context of the entire communication."); *Ky. Kingdom*, 179 S.W.3d at 791 ("A jury … must

consider the broadcasts in their entirety when determining whether the statements and inferences

within it are false and defamatory.").  Context is particularly important in analyzing television

broadcasts, because such a "program may be divided into a number of video and audio segments.

… It is the juxtaposition of these varying segments into an audio and video mosaic that conveys

the meaning or meanings intended." *Lasky v. American Broadcasting Companies, Inc.* 631. F.

Supp. 962, 970 (S.D.N.Y. 1986); *see also Clark*, 684 F.2d 1208, 1214 (holding television broadcast

capable of defamatory meaning due to "ambiguity created when Plaintiff's appearance is viewed

within the context of Act III's focus on the effect of street prostitution on a Detroit middle class

neighborhood," which "renders the Broadcast susceptible to both a defamatory and a non-

---

[20] In its argumentative Exhibit 9, CNN contends that twenty-three of the statements are not defamatory as a matter of law.  But this exhibit was designed to compartmentalize, separate, and scatter each contested statement in literal boxes – a spreadsheet – hoping that this Court will not read them within the context of the entire communication as it is required to do under established law.

defamatory meaning"). Perhaps more important, the Court must analyze each publication "in its entirety and determine if its gist or sting is defamatory." *McCall*, 623 S.W.2d at 884.

Even in its Exhibit 9, CNN concedes that 30 of the purported 53 categorized statements contain a defamatory meaning. For instance, CNN does not dispute that it is defamatory to assert that Nicholas harassed, mocked, and/or taunted Phillips or the BHI. Nor does it dispute that it was defamatory when CNN republished Phillips' statements that he was "in a really dangerous situation" and Nicholas and his CovCath classmates "want[ed] to have the freedom to just rip me apart," or that Nicholas and his CovCath classmates "were going to hurt the [BHI] because they didn't like the color of their skin" or "their religious views." (Mot. Ex. 9 at 1, 4, 6, 32). CNN does dispute, however, that statements such as Nicholas "put himself in front of me and wouldn't move," "blocked" Phillips' "path" and "escape," and that Phillips was "scared" as a result, are defamatory. (*Id.* at 8, 23-24). The position that these statements are incapable of a defamatory meaning is nonsensical when they are read in context.

For example, the context of these statements included that, among other things, Phillips "know[s] the mentality of 'there's enough of us, we can do this,'" (Compl. ¶ 148(f)), that Nicholas was "harassing and mocking" Phillips, (*id.* ¶ 148(f)), that Phillips was merely praying and playing an Indigenous unity song (*see* Section(II)(A), *supra*), that had Phillips taken another step toward Nicholas it "would have been the thing that the group of people would have needed to spring on me," (Compl. ¶ 148(h)), and that it was "not safe in that circle" of a "crowd of teenagers," (*id.* ¶ 165(b)-(c)). In that context, the statements that Nicholas scared Phillips when he blocked his path and escape are clearly capable of a defamatory construction, including, e.g., that Nicholas was engaged in racist conduct and that Nicholas was engaged in physically threatening conduct and/or conduct amounting to assault toward an elderly Native American man merely engaged in song and

prayer.  As set forth extensively in the Factual Background, Section(II), *supra*, each of CNN's publications contained contextual clues rendering the alleged statements capable of a defamatory meaning, including that Nicholas was a privileged white male aggressively confronting two peaceful minority groups, which is universally condemned as reprehensible behavior.  By way of further example, in isolation Phillips stating that he knows "that mentality of 'there's enough of us, we can do this,'" may not be defamatory, while it clearly conveys in context that Nicholas assaulted an elderly Native American man.  *Cf. Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 1994 WL 413394, at *12 (Mich. Cir. Ct. Jan. 4, 1994) (some statements, "standing along, [might] not [be] defamatory, however, within the context of [an] entire broadcast, may be capable of conveying" a defamatory meaning).

Moreover, accusations of specific racist conduct, racist speech, taunting, and assault are routinely held to be defamatory per se. *See, e.g., Fortney v. Guzman*, 482 S.W.3d 784, 789-90 (Ky. Ct. App. 2015) ("When the communications concern untrue allegations of criminal behavior … the communication is libelous per se); *Toikka v. Jones*, 2013 WL 978926, at *3 (E.D. Ky. 2013) (statement defendants "witnessed [plaintiff] push Evelyn Jones" and call her a "bitch" is libelous per se because it meets definition of assault, which is "an unlawful offer of corporeal injury to another by force"); *Toler*, 458 S.W.3d 276, 280 (accusation of racist comments in the workplace were defamatory per se); *Mullenmeister v. Snap-On Tools Corp.*, 587 F. Supp. 868, 874 (S.D.N.Y. 1984) (collecting cases and holding that "[c]ourts have readily held allegations of racism … to constitute libel per se, at least when founded on specific incidents"); *Boyles v. Mid-Florida Television Corp.*, 431 So. 2d 627, 634-35 (Fla. Dist. Ct. App. 1983), *approved*, 467 So. 2d 282 (Fla. 1985) (the accusation of "taunting the retarded patients" "is something that would tend to subject one to contempt or disgrace," without regard to innuendo).  And, accusing Nicholas of

30

violating the fundamental standards of his school and religious community are precisely the types of accusations that hold individuals up to public scorn.

Both CNN's individual statements in context and the gist of each of its publications are defamatory.   Since all of CNN's publications, when read in the context of the entire communication, are reasonably capable of bearing a defamatory meaning, the case cannot be dismissed on this basis.

## IV.   CNN's Publications Are Not Protected Opinion.

CNN's attacks against Nicholas are not protected opinion because they imply the existence of false and defamatory facts or are based upon false or incomplete facts.   CNN ignored the Supreme Court's landmark decision in *Milkovich v. Lorain Journal*, holding an opinion is actionable if it implies a connotation that "is sufficiently factual to be susceptible of being proved true or false." *Milkovich*, 497 U.S. 1, 18-19, 20 (1990).[21]  Under *Milkovich*, an opinion stating that an objectively verifiable event occurred necessarily implies the existence of undisclosed facts, unless the opinion's basis is disclosed. *Id.*  Even then, if the disclosed basis is false or incomplete, the opinion remains actionable. *Id.* at 18-19. The fundamental question is whether a defendant made an accusation about a verifiable event that either happened or did not—i.e., it can be proven true or false.  *See id.* at 21; *accord Cromity v. Meiners*, 494 S.W.3d 499, 502 (Ky. Ct. App. 2015). An opinion that a person engaged in conduct—such as perjury, assault, or mocking—speaks of objectively verifiable events and is thus actionable if its basis is undisclosed, false, or incomplete.

---

[21] Before *Milkovich*, the Kentucky Supreme Court adopted Restatement § 566, which does not protect an opinion that "implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Yancey*, 786 S.W.2d 854, 857. Kentucky courts have since applied *Milkovich*, holding that "it took a position consistent with [*Yancey*]."  *Williams v. Blackwell*, 487 S.W.3d 451, 454 (Ky. Ct. App. 2016), *as modified* (Mar. 4, 2016); *see also, e.g., Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky. 1999).

When determining if an opinion is actionable, a court examines the "whole context" of a publication. *Yancey*, 786 S.W.2d at 857.

A.     **CNN Accused Nicholas of Engaging in Objectively Verifiable Conduct.**

Setting aside whether CNN's publications are opinion, they are actionable because they accuse Nicholas of engaging in objectively verifiable conduct.  Conduct is a discrete event that either happened, or it did not.  Foremost, CNN accused Nicholas of assaulting Phillips and the BHI, both by using the outright label "assault" and by describing factual circumstances communicating that an assault occurred. As CNN concedes, using the label "assault" is not a matter of subjective opinion.[22]   Yet CNN oscillates between failing to raise an opinion defense for statements describing an assault and arguing that if it describes conduct amounting to assault, but avoids the label, it merely states a subjective opinion.  In Washington D.C., the crime of intent-to-frighten assault involves intending "either to cause injury or to create apprehension in the victim by engaging in some threatening conduct; an actual battery need not be attempted."  *Robinson v. United States*, 506 A.2d 572, 574 (D.C. 1986).[23]   CNN's accusations for which it asserts an opinion defense fall squarely within these elements, publishing, e.g., that Nicholas was "blocking [Phillips'] path" in a situation that was "hate unbridled" leaving him "scared for this safety and the safety of those with him." (*See* Compl. ¶¶ 165(g) & (h); 216(f) & (g)).[24]   Some of the publications

---

[22] In discussing the statement "I felt that this qualified as an assault," CNN only asserts that it is an opinion based on disclosed facts, and does not argue that it is a subjective opinion.  Thus, at least tacitly, CNN concedes that prefacing an accusation about an objectively verifiable event with the words "I felt" does transform a statement into protected opinion.

[23] This crime, "intent-to-frighten assault," only requires general intent "to do the acts which constitute the assault."  *Smith v. United States*, 593 A.2d 205, 207 (D.C. 1991).

[24] Similarly, Taitano's statement "'I did not feel safe in that circle'" necessarily implies that an objectively verifiable event occurred that was dangerous and made Taitano *not feel safe*.  *Cf. Baker v. Kuritzky*, 95 F. Supp. 3d 52, 57 (D. Mass. 2015) (holding that the statement plaintiff was "physically dangerous" was either factual or implied facts about the plaintiff).

make the connection all the more palpable, accusing Nicholas and the other children of being "ready to do harm," wanting to "rip me apart," and "target[ing]" African-Americans as "prey" to be "lynch[ed]," "attack[ed]," and "hurt." (*See, e.g., id.* ¶¶ 148(f), 172(c) & (iv), 181(c), 189(e), (f), (i), & (m)).   CNN does not invoke an opinion defense for statements that are substantively identical, stating that Nicholas "blocked [Phillips'] escape" from a situation he "want[ed] to get away from."  (*See* Mot. Ex. 9 at p. 7).  CNN has thus conceded that statements about this conduct cannot be deemed subjective opinion.   Each of the articles and broadcasts, read in context, communicated some variation of this false blocked-escape-story and thereby accused Nicholas of an assault – which is not a matter of subjective opinion.  These types of claims are tried in Court regularly for truth or falsity because they are capable of objective proof.  In this instance, the Court is aided by the availability of a litany of video evidence as well as witness statements.

Nor are accusations of racist *conduct* merely protected subjective opinions. CNN's brief takes the same misstep as The Washington Post's, pretending its publications merely slapped the generic label "racist" on Nicholas. Instead, CNN accused Nicholas of engaging in specific conduct such as targeting Phillips and others because of their race and religion.  (*See, e.g.*, Compl. ¶ 189(e) ("'They were going to hurt them because they didn't like the color of their skin.'")).   CNN's publications incessantly focus on the respective races of Nicholas, Phillips, and the BHI, including using the term "lynch."  In context, the message is clear: Nicholas' engaged in conduct amounting to racism.  Such accusations of racist conduct are not protected. *See, e.g.¸ Armstrong v. Shirvell*, 596 F. App'x 433, 441-42 (6th Cir. 2015) ("Courts have held that words like 'liar' and 'racist' have clear, well understood meanings, which are capable of being defamatory."); *Overhill Farms, Inc. v. Lopes*, 190 Cal. App. 4th 1248, 1262 (2010) (rejecting opinion defense for "accusation of concrete, wrongful conduct" for statement about "racist *firings*" and "'discriminatory abuse

33

against Latina women immigrants'"). The reason is clear: conduct either occurred or did not and does not exist on a sliding scale.

Nor are CNN's other assertions about Nicholas's conduct – including accusations of mocking, taunting, disrespecting, and harassment – protected subjective opinions. *See, e.g., Boyles v. Mid-Florida Television Corp.*, 431 So. 2d 627, 634–35 (Fla. Dist. Ct. App. 1983), *approved*, 467 So. 2d 282 (Fla. 1985) (holding that "taunting" based on an immutable characteristic may be defamatory without regard to issues of opinion); *Jacobs v. Ethel Walker School Inc.*, 2003 WL 22390051, at *8 (Conn. Super. Ct. Sept. 30, 2003) (denying summary judgment for defendant who accused plaintiff of "mocking" homosexual students); *United States v. Hoxsey*, 17 M.J. 964, 965 (A.F.C.M.R. 1984) (criminal violation for "disrespectful behavior").

The republication of the Diocese and CovCath's statement condemning Nicholas also communicated provably false defamatory facts. By "condemn[ing]" Nicholas and the other students' "*actions*" towards Phillips and Native Americans, and by threatening "expulsion," the statement implied that actual facts existed to warrant subjecting Nicholas to public hatred, contempt, scorn, obloquy, or shame. The implication of underlying defamatory facts is all the more pronounced because a reasonable reader may assume that Nicholas's own Diocese and school – which supervised the trip to D.C. – would know what happened. Ultimately, CNN's republication of the Diocese's and CovCath's statement is a proclamation that Nicholas' *conduct*, as a matter of fact, violated the standards of his religious community and the policies of his school, which takes it out of the realm of protected opinion. CNN's election to republish these statements without any reasonable investigation is actionable.

CNN's discussion of subjective opinion through the lens of *Compuware Corp. v. Moody's Investor Services, Inc.*, sheds no light on this matter. 499 F.3d 520 (6th Cir. 2007). In *Compuware*,

Moody's credit ratings were the product of the "subjective and discretionary weighing of complex factors" such that the ratings could not communicate "any provably false factual connotation[s]." *Id.* at 529. Here, CNN's accusations – including, e.g., assault and other racist conduct – in no way entail the subjective weighing of complex factors.[25]

**B.     CNN's Accusations Are Not Protected Opinions Based on Disclosed Facts.**

Contrary to CNN's argument, an opinion based on disclosed facts is actionable if those bases are false or incomplete. *See, e.g.*, *Milkovich*, 497 U.S. at 18-19.  CNN highlights its explicit accusation of assault against Nicholas – told through Chase Iron Eyes – as an opinion based on disclosed facts: "'As an attorney I felt that this qualified as a legal definition of assault. They were causing an apprehension, an objective fear of offensive contact or harm.'"  (Mot. at 19-20). The basis for this opinion was both false and incomplete.  There was no *objective* fear of contact caused by kids encircling Phillips.  Rather, Phillips purposefully plunged himself into a group of children and accosted one them (Nicholas), who stood motionless as Phillips provocatively pounded a drum within inches of his face.  Moreover, as in *Carey v. CSX Transportation, Inc.*, the accusation of assault was "based on nothing more than . . . unsupported conclusions" and thus is not protected opinion.  2019 WL 181120, at *4 (E.D. Ky. Jan. 11, 2019).

Moreover, even if the Court were to apply the more restrictive Restatement, Iron Eyes' assault statement itself implies the existence of undisclosed facts because CNN and Iron Eyes failed to explain to their audience the lynchpin to their assertion and is therefore actionable.  What Nicholas allegedly did to assault Phillips is simply not mentioned.  *Cf. Yancey*, 786 S.W.2d at 857 (statement implying existence "of undisclosed defamatory fact as the basis for opinion" is

---

[25] Accusations of a crime necessarily communicate provably false factual connotations: i.e., criminal courts cannot deprive citizens of their constitutional right to liberty based on the whims of subjective discretion.

unprotected). And, perhaps most significantly, the bases for this opinion that were apparently disclosed – that Nicholas caused an *objective* fear of offensive contact or harm – is false and conveys the same defamatory gist of assault. Nicholas did not take any action that could cause objective fear.

Nor are the accusations of mocking, harassing, surrounding, or disrespect protected as being based on disclosed facts. CNN asserts this defense for several publications that were based on the Viral Video and false first-hand reports that went well beyond what is shown in the Viral Video and purported to portray Nicholas as accosting Phillips, who was then captive to him and his cohort of hateful children.[26] As described above, this description of the facts is both false and incomplete. Even for the publications that purported to disclose Nicholas' side of the events (which happens to be the truth) or additional videos, the basis was false and incomplete. Neither the Fourth, Fifth,[27] Sixth, or Ninth Articles disclosed the full hosts of relevant facts. For example, the Ninth Article continues to state that Phillips "was trying to retreat and the only way he could do so was to go forward," and that Nicholas "put himself in front of" Phillips, which is patently false. (Compl. Ex. O).

Ultimately, CNN falsely defamed Nicholas by accusing him of engaging in objectively verifiable conduct, often basing these accusations on falsehoods and omissions. As such, CNN cannot escape liability by invoking the opinion defense.

---

[26] Specifically, this circumstance applies to the First, Second, and Third Broadcasts and the First and Second Articles.

[27] CNN also argues that labeling the Fifth Article as labeled "commentary" and "opinion" rendered it protected. (Mot. at 21). *Milkovich* rejected that argument nearly twenty years ago. 497 U.S. at 19 ("[C]ouching a statement . . . in terms of opinion . . . does not dispel [the factual] implications.").

## V.     CNN's Accusations Are False.

Whether the "gist" or "sting" of a communication is justified depends upon whether the contested statements "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (citation omitted).  CNN argues that a total of 26 contested statements are nonactionable because they are "substantially true." (Mot. at 22).  Setting aside the fact that the doctrine of substantial truth applies "in very narrow and limited circumstances and relates only to incidental information and not to essential content," *Ky. Kingdom*, 179 S.W.3d at 791, by enumerating what it thinks is substantially true, CNN concedes that a majority of the statements alleged in the Complaint – 27 of them – are false.

Even when cherry-picking just three statements in the body of its brief, CNN is unable to cobble together a meritorious substantial truth defense.  CNN argues Statement 3 in its Exhibit 9 – that Nicholas put himself in front of Phillips and would not move – is substantially true because Nicholas concedes he did not move when he came face-to-face with Phillips.  But again, CNN ignores the context created by this very sentence itself: the words "*put himself*" connote affirmative action and are in direct contradiction to what CNN concedes actually happened at that day – its preliminary statement says "Phillips … approached Sandmann." (Mot. at 2).  Thus, Nicholas did not *put himself* in front of Phillips, and Nicholas specifically alleged that Phillips approached him, "placing himself directly in front of Nicholas," and that Nicholas "never moved when Phillips approached him, standing quietly and respectfully for several minutes while Phillips continued to bang his drum and sing his song."  (Compl. ¶¶ 18, 20).  CNN's position also continues to ignore the broader context of its publications.  Statement 3 was contained in the First Broadcast, and the statement that Nicholas put himself in front of Phillips and would not move must also be read

alongside the statement that Nicholas "got right in [Phillips'] face," both of which imply affirmative action on the part of Nicholas, who, in reality, stood idly by. CNN's version portrayed Nicholas as the assaulting aggressor, while the truth was the opposite. Did the adult political activist who specifically approached Nicholas from a distance banging a drum in his face actively get into Nicholas's face, or did Nicholas, who *never moved from his spot*, surround Phillips, put himself in front of Phillips, get into Phillips' face, block his path, and block his escape from a dangerous situation?

CNN argues Statements 40 and 47 – that Nicholas mocked Phillips and then lied about it – are substantially true because nine frames of an obscure and blurry cellphone video shows an ownerless hand near Nicholas's face in the air while the camera swings quickly from right to left. No other video or account of that day corroborates CNN's erroneous accusation that Nicholas performed a tomahawk chop. Further, not only does Nicholas's personal January 20 statement refute this accusation, the independent GCI report found no evidence that Nicholas committed this conduct and confirms Nicholas's statement accurately sets forth the events of the January 18 incident. As set forth above, this plainly does not meet the standard for finding substantial truth on motion to dismiss. *Cf. Stringer,* 151 S.W.3d 781, 796 (a defendant is entitled to judgment only "if the evidence supports, without contradiction or room for reasonable difference of opinion, the defense that these statements were substantially true"). CNN's effort to continue its defamatory campaign against Nicholas in this Court is no help to it on substantial truth.

Finally, CNN makes the incredible assertion that "Sandmann fails to demonstrate the falsity of *any* statement that CNN made about him." (Mot. at 23) (emphasis added). Nicholas is entitled to rest on his well-pleaded factual allegations, and in this case, he has specifically alleged that CNN's accusations are false and defamatory in every instance. (*See, e.g.*, Compl., ¶¶ 12-18,

38

30, 41, 43-44, 46-49, 53-54, 58-61, 64-65, 94, 138-39, 143-235).  Setting aside the fact that the Complaint exhaustively alleges the falsity of CNN's accusations, CNN's own preliminary statement reveals the falsity of its reporting.  *See* Introduction, *supra*.  For example, CNN now admits the BHI is an "extremist Black Hebrew Israelite sect," (Mot. at 1) while its reporting called them "four African American young men preaching about the Bible nearby," (*E.g.*, Compl. ¶ 165(e)).  CNN now admits the BHI "directed abusive remarks toward[s] [the students] for nearly an hour," (Mot. at 1) while its reporting omitted the BHI's homophobic and racist shouting at the students and substituted it with Phillips' statement that the students were "taunting a group of African-Americans," (*e.g.*, Compl. ¶ 157(h)), and "were going to hurt [and lynch the BHI] because they didn't like the color of their skin" or "their religious views," (*e.g.*, *id.* , ¶ 189(e)).  CNN now admits that "Phillips … approached Sandmann," (Mot. at 1) while its reporting said "Sandmann got in Phillips' face," (*E.g.*, Compl. ¶ 201(e)).  CNN now admits that "Phillips … intervene[d]," "advanced" and "approached" of his own free will, (Mot. at 1) while its reporting said that Phillips was "confronted by teens" who "circled," "mocked," and "taunted" him in a threatening manner amounting to the legal definition of assault, (*e.g.*, Compl. ¶¶ 201(e), 207(b), 148(d)).  It is beyond dispute that the disparities between its false reporting and CNN's own Motion would have had a "different effect on the mind of the reader."

The falsity of specific statements aside, ultimately the false and defamatory gist conveyed by CNN was that Nicholas and his CovCath classmates instigated a racist confrontation, motivated by an intense hatred for African Americans, Native Americans, elders, and even military veterans, that almost led to physical violence with the BHI and Phillips and amounted to assault.  Since the gists conveyed by CNN's reporting were demonstrably false, the Complaint states a claim for defamation on that basis.

## VI.    <u>Defamation by Implication</u>

CNN attempts to pigeonhole Nicholas's claim as one for defamation by implication (Mot. at 23), but that rule only applies where the defamatory meaning arises from the juxtaposition of *true facts* rather than from the reasonable meaning of false statements themselves, whether individually or in combination.   Here, the defamatory meanings arose directly from CNN's publication of false facts, and those facts, themselves, conveyed in context the defamatory meanings.   *See, e.g., Nichols v. Moore*, 477 F.3d 396, 402 (6th Cir. 2007); *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383, 386-87 (8th Cir. 1996) ("The touchstone of implied defamation claims is an artificial juxtaposition of two true statements or the material omission of facts that would render the challenged statement(s) non-defamatory."). Straight defamation claims are not limited strictly to the words written by the defendant; defamation claims look to the defamatory meaning, the "gist" of statements and publications, which Nicholas has properly alleged.   *Cf. McCall*, 623 S.W.3d 882, 884 ("It is an elementary principle of the law of libel that the defamatory matter complained of should be construed as a whole.   The alleged defamatory words must be measured by their natural and probable effect on the mind of the average lay reader and not be subjected to the critical analysis of the legal mind. We must, therefore, *analyze the article in its entirety and determine if its gist or sting is defamatory*.") (citations omitted) (emphasis added).

Thus, Nicholas's claim is not an action for defamation by implication, because CNN published demonstrably false facts that were defamatory of Nicholas, and the gist of each of its publications was defamatory.

<u>CONCLUSION</u>

For the reasons identified herein, the Defendant's Motion should be denied.

40

Respectfully submitted this 26th day of June, 2019.

**L. LIN WOOD, P.C.**

*/s/ L. Lin Wood*
L. Lin Wood (*pro hac vice*)
lwood@linwoodlaw.com
Nicole Jennings Wade (*pro hac vice*)
nwade@linwoodlaw.com
G. Taylor Wilson (*pro hac vice*)
twilson@linwoodlaw.com
Jonathan D. Grunberg (*pro hac vice*)
jgrunberg@linwoodlaw.com

1180 W. Peachtree Street, Ste. 2040
Atlanta, GA 30309
Tel: 404-891-1402
Fax: 404-506-9111

**Hemmer DeFrank Wessels PLLC**

*/s/ Todd V. McMurtry*
Todd V. McMurtry
Kentucky Bar No. 82101
tmcmurtry@hemmerlaw.com
Kyle M. Winslow
Kentucky Bar No. 95343
kwinslow@hemmerlaw.com

250 Grandview Drive, Ste. 500
Ft. Mitchell, KY 41017
Tel: 859-344-1188
Fax: 859-578-3869

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2019, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.


/s/ Todd V. McMurtry

Plaintiff's Counsel