**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

| | |
|---|---|
| **NICHOLAS SANDMANN, by and through his parents and natural guardians, TED SANDMANN and JULIE SANDMANN,** | **Civil Action No. 2:19-CV-31-WOB-CJS** |
| Plaintiff, | |
| v. | |
| **CABLE NEWS NETWORK, INC.,** | |
| Defendant. | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Charles D. Tobin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

James E. Burke (*pro hac vice*)
Sarah V. Geiger (KBA No. 96173)
Amanda B. Stubblefield (KBA No. 96213)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
sgeiger@kmklaw.com
astubblefield@kmklaw.com

*Counsel for Defendant Cable News Network, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................1

A.     Sandmann Mischaracterizes the Legal Framework for Assessing His Claim ....................1

B**.**     Many of the Challenged Statements Do Not Convey a Defamatory Meaning...................4

C.     Many of the Challenged Statements Are Protected Opinion .................................................7

D.     Many of the Challenged Statements Are Substantially True .............................................10

E.     The Majority of the Challenged Statements Are Not About Sandmann .........................13

CONCLUSION...........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                         **Page(s)**

*Air Wis. Airlines Corp. v. Hoeper*,
   571 U.S. 237 (2014)...................................................................................10, 11

*Bailey v. City of Ann Arbor*,
   860 F.3d 382 (6th Cir. 2017) ...............................................................12

*Bates v. N.Y. Times Co.*,
   1993 WL 557891 (W.D. Ky. 1993) .....................................................3, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................15

*Biber v. Duplicator Sales & Serv., Inc.*,
   155 S.W.3d 732 (Ky. Ct. App. 2004) ..................................................8

*Boyles v. Mid-Fla. Television Corp.*,
   431 So. 2d 627 (Fla. Dist. Ct. App. 1983) ..........................................9

*Brewer v. Town of W. Hartford*,
   2007 WL 2904207 (D. Conn. Sept. 28, 2007) ....................................11

*Chapin v. Greve*,
   787 F. Supp. 557 (E.D. Va. 1992) ......................................................3

*Chau v. Lewis*,
   935 F. Supp. 2d 644 (S.D.N.Y. 2013)................................................14

*Church of Scientology Int'l v. Time Warner, Inc.*,
   806 F. Supp. 1157 (S.D.N.Y. 1992)....................................................14

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.*,
   499 F.3d 520 (6th Cir. 2007) ..............................................................2, 7

*Cox Texas Newspapers, L.P. v. Penick*,
   219 S.W.3d 425 (Tex. App. 2007).......................................................4

*Cullen v. Se. Coal Co.*,
   685 S.W.2d 187 (Ky. Ct. App. 1983) ..................................................3

*Dennison v. Murray State Univ.*,
   465 F. Supp. 2d 733 (W.D. Ky. 2006).................................................13

*Dermody v. Presbyterian Church (U.S.A.)*,
   530 S.W.3d 467 (Ky. Ct. App. 2017) ..................................................2, 10

*Friends of the Vietnam Veterans Mem'l v. Kennedy*,
  116 F.3d 495 (D.C. Cir. 1997) ................................................................6

*Gacek v. Owens & Minor Distrib., Inc.*,
  666 F.3d 1142 (8th Cir. 2012) .............................................................8, 9

*Gahafer v. Ford Motor Co.*,
  328 F.3d 859 (6th Cir. 2003) .................................................................6

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
  398 U.S. 6 (1970) ...................................................................................8

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*,
  733 F.2d 1461 (11th Cir. 1984) .............................................................4

*Hartman v. Meredith Corp.*,
  638 F. Supp. 1015 (D. Kan. 1986) ..................................................14, 15

*Haynes v. Alfred A. Knopf, Inc.*,
  8 F.3d 1222 (7th Cir. 1993) ................................................................8, 9

*Hays v. Clear Channel Commc'ns, Inc.*,
  2006 WL 3109132 (Ky. Ct. App. Nov. 3, 2006) .............................2, 3, 7

*Hodge v. WCPO Television News*,
  2001 WL 1811681 (Ky. Cir. Ct. Oct. 1, 2001) .....................................9

*Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*,
  242 S.W.3d 518 (Tex. App. 2007) .......................................................14

*Jacobs v. Ethel Walker Sch. Inc.*,
  2003 WL 22390051 (Conn. Super. Ct. Sept. 30, 2003) ........................9

*Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*,
  179 S.W.3d 785 (Ky. 2005) ................................................................11

*Knight First Amendment Inst. v. Trump*,
  --- F.3d ----, 2019 WL 2932440 (2d Cir. Jul. 9, 2019) .........................1

*Loftus v. Nazari*,
  21 F. Supp. 3d 849 (E.D. Ky. 2014) ................................................8, 13

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991) .........................................................................10, 11

*McCall v. Courier-Journal & Louisville Times Co.*,
  623 S.W.2d 882 (Ky. 1981) ..................................................................3

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ........................................................................................7

*Murray v. Bailey*,
    613 F. Supp. 1276 (N.D. Cal. 1985) ........................................................14

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ..................................................................................10

*Roche v. Home Depot U.S.A.*,
    197 F. App'x 395 (6th Cir. 2006) ..............................................................2

*Seaton v. TripAdvisor LLC*,
    728 F.3d 592 (6th Cir. 2013) .....................................................................7

*Soobzokov v. Lichtblau*,
    664 F. App'x 163 (3d Cir. 2016) ...............................................................5

*Stanton v. Metro Corp.*,
    438 F.3d 119 (1st Cir. 2006) ....................................................................15

*Taylor v. Univ. of the Cumberlands*,
    2018 WL 5726200 (E.D. Ky. Oct. 31, 2018) .......................................2, 3

*Toler v. Sud-Chemie, Inc.*,
    458 S.W.3d 276 (Ky. 2014) ....................................................................10

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) .................................................................9

*United States v. Hoxsey*,
    17 M.J. 964 (A.F.C.M.R. 1984) ...............................................................9

*Vellieux v. NBC*,
    206 F.3d 92 (1st Cir. 2000) ......................................................................14

*Williams v. CitiMortgage, Inc.*,
    498 F. App'x 532 (6th Cir. 2012) ............................................................12

**Other Authorities**

Restatement (Second) of Torts § 564A ..............................................................13

Restatement (Second) of Torts § 566 ...........................................................6, 7

U.S. Const. amend. I ...................................................................................4, 9, 10

## PRELIMINARY STATEMENT

This entire case is about differing impressions arising from the same set of facts in an environment of heated political rhetoric.  The convergence of three disparate groups of protesters – members of the Black Hebrew Israelites, Covington Catholic High School students participating in the March for Life, and Native American activists taking part in the Indigenous Peoples March – on a single day, on a small patch of the National Mall by the Lincoln Memorial, became a symbol for the deep fault lines among Americans in the present era.  As one federal Court of Appeals recently observed, this is "a time in the history of this nation" in which ordinary people are engaged in a debate that "encompasses an extraordinarily broad range of ideas and viewpoints and generates a level of passion and intensity the likes of which have rarely been seen.  This debate, as uncomfortable and unpleasant as it frequently may be, is nonetheless a good thing."  *Knight First Amendment Inst. v. Trump*, --- F.3d ----, 2019 WL 2932440, at *8 (2d Cir. Jul. 9, 2019).

Reviewed objectively, and stepping back from the passion and intensity of that moment, Sandmann's opposition to CNN's motion to dismiss confirms that the statements at the heart of his defamation claim are not actionable.  They do not convey a defamatory meaning, are protected opinion, are substantially true, or are not about him at all.

## ARGUMENT

### A.     Sandmann Mischaracterizes the Legal Framework for Assessing His Claim

In his opposition ("Opp.") to CNN's motion ("Mot."), Sandmann either distorts or ignores several overarching principles of free expression that are essential to defamation law.

**First, the Court must assess each individual statement at issue to determine whether it survives CNN's motion to dismiss.**  Sandmann purports to bring a single defamation claim arising from seventeen distinct publications and dozens of separate statements.  Yet he complains

1

generally about a "seven-day media cycle," Opp. at 7, and suggests that the Court lump all of the statements into overarching "defamatory gists," rather than evaluating each separate statement. *Id*. at 7-19, 39.  It is well established, however, that when a defamation claim arises from multiple distinct statements, the court is to evaluate each statement individually to determine which, if any, survives the pleading stage.  *See, e.g.*, *Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 398-99 (6th Cir. 2006) (separately evaluating each challenged statement from single publication in affirming trial court's dismissal of defamation claims); *Hays v. Clear Channel Commc'ns, Inc.*, 2006 WL 3109132, at *3-4 (Ky. Ct. App. Nov. 3, 2006) (same).

**Second, because Sandmann has expressly disclaimed bringing a defamation-by-implication claim, he must identify specific statements that are actionable.**  To avoid pleading special damages or meeting the rigorous constitutional burden of plausibly pleading CNN's intent, Sandmann insists that this "is not an action for defamation by implication."  Opp. at 40; *see also Dermody v. Presbyterian Church (U.S.A.)*, 530 S.W.3d 467, 475 (Ky. Ct. App. 2017) (affirming dismissal of defamatory implication claim for failure to plead special damages, as required for libel *per quod*); *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 528-29 (6th Cir. 2007) (defamation by implication claim requires plausible allegation that publisher "intended or knew of" any defamatory implications).  Having made this strategic choice, he is foreclosed from arguing throughout the opposition that his claims are not limited to what CNN actually said in its reporting.  Opp. at 40.

Bedrock defamation law, in Kentucky and elsewhere, holds that a non-implication claim must fail unless the plaintiff identifies one or more statements that meet all of the required elements of a defamation claim.  *See, e.g.*, *Taylor v. Univ. of the Cumberlands*, 2018 WL 5726200, at *5 (E.D. Ky. Oct. 31, 2018) (dismissing non-implication claim where plaintiff failed

to identify actionable statement in challenged publication); *Chapin v. Greve*, 787 F. Supp. 557, 564 (E.D. Va. 1992) (rejecting non-implication claim based on allegation that article accused plaintiffs of "dishonesty, profiteering, and defrauding" where "[t]he article directly state[d] no such thing"), *aff'd*, 993 F.2d 1087 (4th Cir. 1993).  It is not enough for Sandmann to assert a defamatory "gist" and ask the Court to ferret out "contextual clues."  Opp. at 30.  Instead, he must "identify . . . a statement by [CNN] that rises to the level of defamation."  *Taylor*, 2018 WL 5726200, at *5 (rejecting non-implication claim based on "subtext" of defendant's statements); *see also Hays*, 2006 WL 3109132, at *4 (rejecting non-implication claim based on "overall tenor and tone of the broadcast").[1]

And while the Court should consider the challenged statements in context, Sandmann "cannot enlarge or add to the sense or effect of the words charged to be libelous, or impute to them a meaning not warranted by the words themselves."  *Cullen v. Se. Coal Co.*, 685 S.W.2d 187, 190 (Ky. Ct. App. 1983).  Nor can Sandmann pluck separate non-actionable statements from various publications and selectively lump them together in an attempt to manufacture a defamatory "gist."  *Compare, e.g.*, Opp. at 32-33 (combining and rearranging seven individual statements appearing in various publications to sew together implausible implication that Sandmann committed "assault"), *with Bates v. N.Y. Times Co.*, 1993 WL 557891, at *3 (W.D. Ky. 1993) (rejecting plaintiff's attempt to graft statements from one news report onto another because doing so would "expand[] upon the sense or effect of the words themselves").  Rather, the Court must assess each "individual publication at issue" to determine whether it contains a

---

[1] *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981), cited in Opp. at 40, does not hold otherwise.  The Court there held that a news article was defamatory as a whole only after determining that the article contained specific statements linking the plaintiff to a "fix or bribe."  *Id.* at 885.

3

false and defamatory statement of fact about Sandmann.  *Cox Texas Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 436-37 (Tex. App. 2007) (rejecting "novel" theory that court should examine "all related publications, . . . when the focus remains on whether [a] specific publication is defamatory at all").

**Third, allegations regarding CNN's supposed "agenda" are irrelevant to this motion to dismiss.**  Sandmann's opposition alleges that CNN harbored "political and financial agendas," including an "anti-Trump agenda," and that CNN "fail[ed] to investigate and exercise ordinary care" in its reporting.  Opp. at 4, 7.  These baseless accusations are entirely irrelevant to the motion to dismiss.  CNN's motion is premised solely on the defenses that the challenged statements were (1) not defamatory, (2) protected opinion, (3) substantially true, or (4) not "of and concerning" Sandmann.  Those defenses have no bearing on CNN's supposed agenda or whether it acted with negligence or First Amendment actual malice.  *See, e.g.*, *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (defendant's state of mind in publishing statements is irrelevant where statements themselves are non-actionable).

**B.     Many of the Challenged Statements Do Not Convey a Defamatory Meaning**

As CNN explained in its opening brief ("Br."), twenty-three of the challenged statements cannot support a defamation claim because they do not convey a defamatory meaning.  Br. at 16-18.

First, and most prominently, Sandmann challenges statements to the effect that he "put himself in front of [Phillips] and wouldn't move," "got right in his face," or "blocked his path." *See* Statements 3, 7, 8, 23, 24, 49[2]; *see also* Opp. at 29-30.  Those statements, in each instance paired with references to the viral video showing Sandmann merely standing face-to-face with

_____

[2] All citations to "Statement[s] __" refer to Exhibit 9 to CNN's motion, Doc. 31-10.

Phillips and smiling, are not reasonably capable of a defamatory meaning.  While such conduct

toward an elder may be viewed as impolite or disrespectful, it simply does not "amount[] to

assault," as Sandmann contends.  Opp. at 29.  There is no suggestion in CNN's reporting that

Sandmann actually engaged in or threatened physical contact, much less violence, with Phillips.

Indeed, just the opposite: CNN's interview with Native American activist and attorney Chase

Iron Eyes – which contains the sole use of the word "assault" in any of the challenged reports –

concludes with his explicit statement:  "*We avoided any physical confrontation, any violence,*

*and that was the most important thing.*"  Mot. Ex. 4 at 6:22-6:28.  Additionally, contrary to

Sandmann's argument that these statements accused him of "instigat[ing]" the confrontation with

Phillips, *see, e.g.*, Opp. at 9, each report also made clear that Phillips first approached Sandmann

and his classmates, not the other way around.  Phillips himself told CNN's audience that he "*put*

*[him]self in front of that*" when he "*started taking those steps and using the drum*" to intervene

in the confrontation between the students and the Black Hebrew Israelites.  Compl. Ex. I at 3, 5.

    Second, Sandmann challenges statements that a large group of Covington Catholic

students "confronted," "surrounded," and "circle[d]" Phillips when he walked up to them, *see*

Statements 8, 11, 14, 23, 25, 26, 30, 44, 49, 50; *see also* Opp. at 29, and that the students had a

verbal "clash" with the Black Hebrew Israelites, *see* Statements 5, 14, 21.  As noted in CNN's

opening brief, these terms are "merely descriptive" of the situation and do not carry the

connotation of violence that Sandmann ascribes to them.  Br. at 17 (quoting *Bates*, 1993 WL

557891, at *3); *see also Soobzokov v. Lichtblau*, 664 F. App'x 163, 166-67 (3d Cir. 2016)

(statement that plaintiff would "'angrily' confront protestors" was not defamatory).

    Finally, Sandmann challenges a number of statements to the effect that his classmates

wore "MAGA" hats and chanted "Build the wall" and "Trump 2020."  *See* Statements 11, 13, 20,

25, 30, 45, 46, 49; *see also, e.g.*, Opp. at 10.  As CNN has already pointed out, these statements are all part of the political discourse displayed and chanted by President Trump and his supporters.  *See* Br. at 17.  Nothing could be more protected, and, as a legal matter, less defamatory, than portraying someone as a supporter of the President – and Sandmann nowhere contends that he has been miscast as a supporter of President Trump.

In short, none of these twenty-three statements fall outside the realm of protected speech and are not sufficient to find a defamatory meaning.  *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 862-63 (6th Cir. 2003) (affirming dismissal of defamation claim where statements at issue lacked defamatory meaning).  On a day of multiple demonstrations on disparate political issues at the National Mall, a place where "the constitutional rights of speech and peaceful assembly find their fullest expression," news reporting that different groups of protesters encountered each other in close proximity, and engaged in contentious exchanges, is simply not defamatory as a matter of law.  *Friends of the Vietnam Veterans Mem'l v. Kennedy*, 116 F.3d 495, 495-96 (D.C. Cir. 1997).

Sandmann attempts to evade the defamatory meaning requirement for these twenty-three statements by conflating them – in the guise of providing "context" – with other statements expressing individuals' feelings in response to the students' conduct and views about the students' motives.  Rather than actually focus on "context," however, Sandmann invents implications that go far beyond, and are contrary to, the actual language of the reports.  Sandmann argues, for example, that statements that he blocked Phillips' path "are clearly capable of a defamatory construction" because, "in context," they imply that Sandmann behaved in a "racist" or "physically threatening" manner.  Opp. at 29.  But, as discussed in greater detail below, *see infra* pp. 7-10, those subjective reactions to Sandmann's conduct are protected

6

opinion, however unflattering they may be.  *See* Restatement (Second) of Torts § 566 cmt. c ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."); *see also Hays*, 2006 WL 3109132, at *3 (adopting Restatement (Second) of Torts § 566).

## C.     Many of the Challenged Statements Are Protected Opinion

As set forth in CNN's opening brief, thirty-five of the challenged statements are not actionable because they are purely subjective expressions of opinion that cannot be proven true or false, conclusions based on disclosed facts, or both.[3]  Br. at 18-23.

For example, while Sandmann makes much of Chase Iron Eyes' use of the word "assault," Iron Eyes explained the basis for his opinion:  "*They were very loud, very aggressive, very vocal, and they were disrupting.  They were trying to drown out not only the group of African Americans, but Nathan Phillips, Raymond Kingfisher, some of our elders who were closing out a beautiful day of the Indigenous Peoples March.*"  Mot. Ex. 4 at 3:44-4:02.  In the same interview, Iron Eyes further explained: "*I was right there, and these were high school kids, but there was about sixty of them, and they all knew how to chant the same cheers, and it was aggressive.  It was just a very tense environment. . . . We avoided any physical confrontation, any violence, and that was the most important thing.*"  *Id.* at 6:06-6:28.  Thus, contrary to Sandmann's assertion, Opp. at 35-36, Iron Eyes explicitly stated the basis for his use of the term "assault" – the "tense environment" where they "avoided physical confrontation [and] any

---

[3] Sandmann erroneously accuses CNN of "ignor[ing] the Supreme Court's landmark decision" in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), *see* Opp. at 31, when in fact CNN cited more recent Sixth Circuit decisions citing and applying the principles of *Milkovich*.  *See* Br. at 18 (citing *Compuware*, 499 F.3d 520, and *Seaton v. TripAdvisor LLC*, 728 F.3d 592 (6th Cir. 2013)).

violence" and where a group of about 60 high school students loudly "chant[ed] the same

cheers" in front of the Native American activists.  In context, Iron Eyes' use of the word

"assault" is a quintessential example of protected opinion based on disclosed facts, which allows

the viewer to "decide for himself or herself whether the opinion[] should be accepted."  *Loftus v.*

*Nazari*, 21 F. Supp. 3d 849, 853 (E.D. Ky. 2014); *see also Greenbelt Coop. Publ'g Ass'n v.*

*Bresler*, 398 U.S. 6, 13-14 (1970) (statement that plaintiff had engaged in "blackmail" was

protected opinion in context of "heated" public debates).

 Sandmann's contention that other aspects of CNN's reporting "describe[] conduct

amounting to assault, but avoid[] the label," Opp. at 32, also does not withstand scrutiny.

Statements that Sandmann "blocked" Phillips' path are not defamatory, *see supra* pp. 4-5, in

addition to being substantially true, *see infra* pp. 11-12.  And statements conveying Phillips' and

other observers' emotional response to the students' conduct are clear expressions of opinion that

are incapable of being proven true or false.  *See, e.g.*, *Biber v. Duplicator Sales & Serv., Inc.*, 155

S.W.3d 732, 737 (Ky. Ct. App. 2004) (defendant's statement, in response to plaintiff's conduct,

that he "felt like he had been conned by the world's greatest con man" was protected opinion);

*Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1147 (8th Cir. 2012) (statements

expressing defendant's "theory or surmise" that plaintiff was "the reason for [his coworker's]

death" was protected opinion (internal marks omitted)); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d

1222, 1227 (7th Cir. 1993) (because a person's internal thoughts "can never be known for sure,"

statements speculating about motives do not convey "information that the plaintiff might be able

to prove false in a trial" and are protected opinion).  Thus, to use Sandmann's examples, Opp. at

32-33; *see also* Statements 6, 23, 32, Phillips' statements that he was "scared" for his own safety,

perceived the situation as "hate unbridled," and feared the students intended to "attack" or

"lynch" the Black Hebrew Israelite protesters and "want[ed] to have the freedom to just rip me

apart," are nothing more than the subjective opinions of a participant in the controversy. *See*

*Hodge v. WCPO Television News*, 2001 WL 1811681, at *2 (Ky. Cir. Ct. Oct. 1, 2001) (in

defamation suit over news reports covering allegations that government official gave favorable

treatment to local developer, media defendant could not be held liable for "merely reporting on

the controversy which included opinions expressed by those who were critical of" plaintiff).

Similarly, the statements by Phillips and a Native American commentator that they

believed the students' conduct was motivated by "racism" or prejudice, *see* Statements 31, 32,

35, 42, 43, are non-actionable opinions. *See* Br. at 20-21. Many Americans, rightly or wrongly,

associate gestures like the "tomahawk chop" performed by the students – and even the "MAGA"

hat itself – with racial insensitivity. Statements by CNN sources associating the symbolism at

the Lincoln Memorial that day with racism therefore would be clear to the reasonable viewer as

subjective opinions.[4] The law is clear that, under the First Amendment, "anyone is entitled to

speculate on a person's motives from the known facts of his behavior." *Haynes*, 8 F.3d at 1227;

*see also Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018); *Gacek*, 666 F.3d at 1147.

Lastly, Sandmann takes issue with CNN's accurate quotation of the joint statement issued

by Covington Catholic and the Diocese on January 19, 2019, "condemn[ing]" the students'

actions "towards Nathan Phillips specifically, and Native Americans in general," and promising

---

[4] Sandmann similarly misses the mark in arguing that "accusations of mocking, taunting, disrespecting, and harassment" are not "protected subjective opinions." Opp. at 34. Neither of the defamation cases he cites even considers an opinion defense. *See Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627 (Fla. Dist. Ct. App. 1983); *Jacobs v. Ethel Walker Sch. Inc.*, 2003 WL 22390051 (Conn. Super. Ct. Sept. 30, 2003). The third case he cites, addressing a charge of "disrespectful behavior" toward the accused's superior officer in the Air Force under the Uniform Code of Military Justice, is a complete *non sequitur*. *See United States v. Hoxsey*, 17 M.J. 964 (A.F.C.M.R. 1984).

to "investigate[]" and "take appropriate action, up to and including expulsion."  Opp. at 34; *see also* Statement 9.  Nothing in this statement suggests that the school and Diocese based their opinion on undisclosed false and defamatory facts about the events of the previous day, and regardless, their conclusion that "[t]his behavior is opposed to the Church's teachings on the dignity and respect of the human person" is the purely subjective opinion of Canonical doctrine, not justiciable in a court.  *See Dermody*, 530 S.W.3d at 474 ("The ecclesiastical-abstention doctrine prohibits courts from deciding cases dependent on the question of doctrine, discipline, ecclesiastical law, rule, or custom, or church government." (internal marks omitted)).  Notably, when the Diocese subsequently apologized for condemning the students' actions and later released a written report of its investigation into the events of January 18, CNN reported on those statements as well.  *See* Compl. Ex. O; Br. at 11.

**D.      Many of the Challenged Statements Are Substantially True**

CNN also demonstrated in its opening brief that twenty-six of the challenged statements are not actionable because they are substantially true.  In his opposition, Sandmann misrepresents two core constitutional principles relating to the essential element of falsity.  First, at least in cases involving a media defendant or a matter of public concern, the First Amendment mandates that the *plaintiff* bears the burden of establishing that an allegedly defamatory publication is false.  *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986).  Sandmann speciously relies on a recent Kentucky Supreme Court decision, involving a claim of defamation in the workplace against a private employer, for the proposition that "the falsity of defamatory statements is presumed."  *See* Opp. at 22 (quoting *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 283 (Ky. 2014)).  But, under *Hepps*, Sandmann bears the burden of proving falsity in this case, which involves both a media defendant and a matter of public concern.  Second, to carry the constitutional burden of proving falsity, the plaintiff must show that the falsity is material,

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991), meaning "it affects the subject's reputation in the community," *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 250 (2014).  Sandmann misleadingly cites *Kentucky Kingdom Amusement Co. v. Belo Kentucky, Inc.*, 179 S.W.3d 785, 791 (Ky. 2005), for the notion that "the doctrine of substantial truth applies 'in very narrow and limited circumstances and relates only to incidental information and not to essential content.'"  Opp. at 21, 37.  That isolated language cannot be reconciled with *Masson*, in which the U.S. Supreme Court held that, notwithstanding any "[m]inor inaccuracies," a "statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517 (internal marks omitted).  It is also belied by the Kentucky Supreme Court's recognition that a report must be "fundamentally inaccurate" to be false.  *Ky. Kingdom*, 179 S.W.3d at 791-92.

Once again, Sandmann's primary factual contention in this case is that CNN falsely reported that he "blocked" Phillips.  Opp. at 37-38; *see also* Statements 3, 7, 8, 22, 24, 33, 49, 51.  He argues that this language implies that he was "the assaulting aggressor, while the truth was the opposite."  Opp. at 38.  But Sandmann himself has admitted that these statements are substantially true by alleging that he "never moved when Phillips approached him," Compl. ¶ 20, even as the crowd of students "parted for" Phillips, Compl. Ex. C at 2, and proclaiming his "right to stay there," Mot. Ex. 8 at 4.  There is no material difference to Sandmann's reputation in saying that he "blocked," "put himself in front of," or "got right in [the] face" of Phillips versus saying that he made a conscious choice not to move out of Phillips' way, as his classmates did, when the two came face-to-face.  *See Brewer v. Town of W. Hartford*, 2007 WL 2904207, at *7 (D. Conn. Sept. 28, 2007) (even if report inaccurately stated that plaintiff initiated confrontation,

"[w]ho initiated the altercation is less important than the content of the altercation," and conduct described by defendant was "not materially different from the behavior that [plaintiff] admits").

Moreover, Sandmann's contention that he was falsely lumped in with his classmates' conduct, when CNN truthfully reported on the students' "tomahawk chop," is implausible given the video his counsel incorporated into the Complaint. While Sandmann now calls it "an obscure and blurry cellphone video" that the Court should disregard for purposes of this motion, Opp. at 38; *id.* at 6 n.4, his Complaint pleads that the video "accurately set forth the truth of the January 18 incident," Compl. ¶¶ 80-81. Sandmann is bound by this pleading at the motion to dismiss stage. The Court can, and should, assess for itself what the video shows for purposes of determining the plausibility of Sandmann's defamation claim with respect to Statements 40 and 47. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (where video incorporated by reference "utterly discredits" plaintiff's version of events, court may "ignore the visible fiction in [the] complaint" (internal marks omitted)); *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("court need not feel constrained to accept as truth" allegations in complaint "that are contradicted . . . by documents upon which its pleadings rely").

Finally, Sandmann's contention that "CNN's own preliminary statement reveals the falsity of its reporting," because CNN's recitation of the facts in the motion mirrored the Complaint, Opp. at 39, merely underscores the reason why his entire Complaint should be dismissed. There is nothing materially false or inconsistent in calling the Black Hebrew Israelite activists "four African American young men preaching about the bible and oppression" in a news broadcast, Statement 5, or in calling them "a group of protesters affiliated with the extremist Black Hebrew Israelite sect" in a court pleading. Br. at 1. Each reflects a subjective perspective of an undisputed fact. Neither provides a basis, consistent with freedom of speech, for a lawsuit.

**E.      The Majority of the Challenged Statements Are Not About Sandmann**

Sandmann does not dispute that Kentucky's group libel rule precludes an individual from

recovering for statements made about a group of which he or she is a member.  *See* Br. at 15-16.

He instead argues that Kentucky's bar on group libel claims is "inapplicable" here because CNN

"identified" him in its reporting.  Opp. at 24.  Sandmann thus contends that, so long as a

challenged CNN publication identifies Sandmann in some respect, *each and every* statement in

that publication must be of and concerning him – including statements expressly about the

Covington Catholic students as a group.

That turns Kentucky law on its head.  Courts in Kentucky analyze *each challenged*

*statement* to determine whether the statement could be reasonably understood to be about the

plaintiff as an individual, including in cases where the plaintiff is identified elsewhere in the

publication.  In *Loftus*, for example, this Court considered a defamation claim filed by a surgeon

in response to several online postings made by a former patient.  21 F. Supp. 3d at 853-54.  The

postings identified the physician by name and accused her of botching the patient's surgery,

while also alleging "a conspiracy among the medical profession" to cover up incidents of

medical malpractice.  While the statements about the surgery itself were about the physician, the

conspiracy allegations, this Court concluded, were about "the medical profession" generally, and

thus could not support a libel claim by the plaintiff physician.[5]  *Id.* ("a member of a class has no

claim against someone defaming the class as a whole" (citing Restatement (Second) of Torts

§ 564A));  *see also Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733, 751-52 (W.D. Ky.

2006) (statement alleging that foundation lacked transparency was not of and concerning

_____

[5] Sandmann unsuccessfully attempts to distinguish *Loftus* by arguing that the two statements at
issue "described separate occurrences."  Opp. at 27.  Not so.  The defendant's conspiracy
allegations in that case flowed directly from her accusation that the plaintiff physician previously
performed a botched surgery.  *See Loftus*, 21 F. Supp. 3d at 852.

plaintiff, even though plaintiff was member of foundation and was individually identified elsewhere in publication).[6]

Sandmann also wrongly argues for a bright-line exception to the group libel rule whenever "the speaker uses a photograph depicting the plaintiff."  *See* Opp. at 26.  That oversimplified position finds no support in the case law.  In *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992), *aff'd*, 238 F.3d 168 (2d Cir. 2001), for example, the Church of Scientology International ("CSI") – a corporate affiliate of Scientology – asserted libel claims arising from a magazine article that included a photograph depicting CSI's corporate headquarters.  The court nonetheless rejected several claims under the group libel rule, concluding that many of the statements would reasonably be understood to apply to Scientology generally, rather than CSI in particular.  *See id.* at 1161.  Other courts likewise hold the inclusion of a plaintiff's image is insufficient to transform "impersonal criticism" of a group into a specific accusation that an individual member engaged in wrongdoing.  *Houseman v. Publicaciones Paso del Norte, S.A. DE C.V.*, 242 S.W.3d 518, 526 (Tex. App. 2007) (dismissing defamation claim filed by border patrol agent pictured in news report "that constituted an impersonal criticism of corrupt border patrol agents").  Rather, a claim can proceed only where there is a "linkage" between the plaintiff *as an individual* and the alleged defamatory statements at issue.  *Hartman v. Meredith Corp.*, 638 F. Supp. 1015, 1017-18 (D. Kan. 1986) (news broadcast concerning

---

[6] *See also, e.g.*, *Chau v. Lewis*, 935 F. Supp. 2d 644, 664 (S.D.N.Y. 2013) (collateralized debt obligation (CDO) manager criticized in book about subprime crash could not maintain libel action for statements in book "directed toward CDO managers as a group"), *aff'd*, 771 F.3d 118 (2d Cir. 2014); *Vellieux v. NBC*, 206 F.3d 92, 115-16 (1st Cir. 2000) (statement that "stay awake" mentality plaguing long-distance trucking industry had "led to many accidents and death" was not defamatory as to particular truck driver profiled in broadcast, because statement was not personal to him); *Murray v. Bailey*, 613 F. Supp. 1276, 1283 (N.D. Cal. 1985) (prosecutor profiled in book could not challenge statement that "once a prosecution gets rolling, police and prosecutors are often reluctant to let truth become an obstacle").

14

illegal gambling operation was not of and concerning individuals whose images appeared "in the absence of any mention of plaintiffs' names linking them with the illegal activity").

Sandmann cannot establish the requisite "linkage" between the use of his image and the allegedly defamatory statements about the group of Covington Catholic students. For example, Statements 5, 14, 16, 21, 31, 32, and 35 concern a confrontation between the students and protesters affiliated with the Black Hebrew Israelites that occurred before the encounter between Sandmann and Phillips. No reasonable reader of CNN's reporting would interpret the images and video of Sandmann and Phillips to mean that the statements about the earlier confrontation with the Black Hebrew Israelites referred to Sandmann in particular. Similarly, Statements 13, 19, 20, 39, 45, and 46 describe the students as chanting "Build the Wall" and "Trump 2020," whereas, in marked contrast, the published images and video footage show Sandmann standing silently in front of Phillips. And Statements 11, 18, 30, and 35 – which describe the students as "surrounding" Phillips – cannot be understood to apply to Sandmann, because the published images and video show that *both* Sandmann *and* Phillips were surrounded. *See, e.g.*, Statement 22 (statements that Sandmann "got in Phillips' face" while "*[o]ther* boys circled around" (emphasis added)). Simply put, the inclusion of Sandmann's image in CNN's reporting is insufficient to transform statements about the students as a group into statements about Sandmann as an individual.[7] Claims based on those statements must therefore be dismissed.

---

[7] *Stanton v. Metro Corp.*, 438 F.3d 119 (1st Cir. 2006), cited in Opp. at 24-25, reinforces this point in holding that the "of and concerning" analysis will invariably "depend[] on the circumstances," including in cases where the plaintiff's image is used in the challenged publication. *Id.* at 128. In permitting the plaintiff's claims to proceed, the court did not discuss the group libel doctrine and instead applied the "no set of facts" pleading standard that is no longer applicable in federal court. *Id.* at 132; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (rejecting "no set of facts" standard). Furthermore, neither *Stanton* nor the other cases cited by Sandmann involved facts analogous to this case, in which the plaintiff's image actually *dispels* the connection between the plaintiff and the challenged statements.

## CONCLUSION

For the foregoing reasons, CNN respectfully requests that the Court dismiss the

Complaint with prejudice and grant such other and further relief as it deems just and proper.

Respectfully submitted,

/s/ James E. Burke

| | |
|---|---|
| Charles D. Tobin (*pro hac vice*) | James E. Burke (*pro hac vice*) |
| Maxwell S. Mishkin (*pro hac vice*) | Sarah V. Geiger (KBA No. 96173) |
| BALLARD SPAHR LLP | Amanda B. Stubblefield (KBA No. 96213) |
| 1909 K Street, NW, 12th Floor | KEATING MUETHING & KLEKAMP PLL |
| Washington, DC 20006 | One East Fourth Street, Suite 1400 |
| Telephone: (202) 661-2200 | Cincinnati, OH 45202 |
| Fax: (202) 661-2299 | Telephone: (513) 579-6400 |
| tobinc@ballardspahr.com | Fax: (513) 579-6457 |
| mishkinm@ballardspahr.com | jburke@kmklaw.com |
| | sgeiger@kmklaw.com |
| | astubblefield@kmklaw.com |

*Counsel for Defendant Cable News Network, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2019, I electronically filed the foregoing Reply Brief in

Support of Defendant's Motion to Dismiss for Failure to State a Claim via the CM/ECF system,

which will send notice of filing to all parties of record.

*/s/ James E. Burke*
James E. Burke
